1  Neil Gieleghem          CSBN 107389
   Gieleghem Law Office
2  1875 Century Park East, Suite 700
   Los Angeles, CA  90067
3  Telephone: (310) 284-3252
   Telecopier: (310) 284-3253
4  ngieleghem@sbcglobal.net

5  Attorneys for Plaintiff
   Nicholas H. Parker
6

7

8
                **UNITED STATES DISTRICT COURT**
9
            **NORTHERN DISTRICT OF CALIFORNIA**
10

11  NICHOLAS H. PARKER, an individual,      )    CASE NO. 3:08-CV-01896-PJH
                                            )
12            Plaintiff,                     )    Hon. Phyllis J. Hamilton
                                            )
13     vs.                                   )    **PLAINTIFF'S OPPOSITION TO**
                                            )    **DEFENDANTS' MOTION TO**
14  SCOTT MICHAEL MOORE, an individual;      )    **DISMISS; DECLARATION OF NEIL**
    MOORE INTERNATIONAL LAW OFFICES,         )    **GIELEGHEM**
15  A PROFESSIONAL CORPORATION, a            )
    California corporation; MOORE            )    Date:       Wednesday, June 4, 2008
16  INTERNATIONAL LAW OFFICES, A             )    Time:       9:00 a.m.
    PROFESSIONAL CORPORATION, a business     )    Courtroom:  Courtroom 3, 17th Floor
17  entity, form unknown; DOES 1 through 20, )
    inclusive,                               )    *[Nb. Plaintiff's Motion to Remand, etc.*
18                                           )    *noticed for same date and time; filed with*
              Defendants.                    )    *Objections to Declaration of Scott M.*
19  _____ )    *Moore and Objection to Pro Hac Vice*
                                                  *Admission]*
20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, ETC., CASE NO.
3:08-CV-01896-PJH

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................ 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ....................... 2

    A.    Defendants Engaged In The Unlicensed Practice Of
        Law In California ............................................. 2

    B.    Additional Facts Bearing On The Pleading Challenges
        Asserted By Defendants ....................................... 3

    C.    Defendants Ignored Plaintiff's Meet-And-Confer ...................... 4

III.    LEGAL ANALYSIS ................................................... 5

    A.    Defendants' Fed. R. Civ. P. 12(b)(6) Limitations Challenge
        Should Be Denied, Because The Alleged Expiration Of The
        Statute Cannot Be Determined From The Face Of The Complaint;
        And Because Plaintiff's Claims Are Not Time-Barred Given
        Statutory Tolling ............................................. 5

    B.    Plaintiff Has Not Failed To Join Fed. R. Civ. P. 19
        Necessary Parties ............................................ 9

    C.    Plaintiff Is The Fed. R. Civ. P. 17 Real Party In Interest ................ 10

    D.    Plaintiff Has Article III Standing ................................. 11

    E.    Defendants Cannot Assert The Conditional Defense Of
        "Unclean Hands" By Way Of A Fed. R. Civ. P. 12(b)(6)
        Motion; And Plaintiff Did Not Act Inequitably In Any Event ........... 11

    F.    Plaintiff Is Entitled To Recover His Just Costs And Actual
        Expenses, Including Attorney Fees, Incurred In Responding
        To Defendants' Motion ....................................... 12

IV.    CONCLUSION ..................................................... 14

DECLARATION OF NEIL GIELEGHEM ....................................... 1

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3    Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.

4        436 F3d 82 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5    AVCO Corp. v. Precision Air Parts, Inc.,

6        676 F.2d 494 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7    Circle Industries USA, Inc. v. Parke Const. Group, Inc.,

8        183 F.3d 105 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9    Dou Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc.,

10        149 F.R.D. 185 (D MN 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11    Gotro v. R & R Realty Group,

12        69 F.3d 1485 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13    Hess v. Gray,

14        85 F.R.D. 15 (ND IL 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15    Ilan-Gat Engineers, Ltd. v. Antigua Int'l Bank,

16        659 F.2d 234 (DC Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17    McCalden v. California Library Ass'n,

18        955 F2d 1214 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

19    Moore v. Permanente Medical Group, Inc.,

20        981 F.2d 443 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21    Morris v. Bridgestone/Firestone, Inc.,

22        985 F.2d 238 (6th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

23    Sacks v. Office of Foreign Assets Control,

24        466 F3d 764 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25    Shelton v. Exxon Corp.,

26        843 F.2d 212 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

27    Shermoen v. United States,

28        982 F.2d 1312 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1  Suder v. Blue Circle, Inc.,
2       116 F.3d 1351 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
3  Supermail Cargo, Inc. v. United States,
4       68 F.3d 1204 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
5  Tenner v. Zurek,
6       168 F.3d 328 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
7  Thomas v. United States,
8       189 F.3d 662 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
9
10  **Federal Rules**
11  Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
12  Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 11
13  Fed. R. Civ. P. 12(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9
14  Fed. R. Civ. P. 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11
15  Fed. R. Civ. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9-11
16
17  **Federal Statutes**
18  28 U.S.C. § 1447(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12-14
19
20  **State Cases**
21  Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court,
22       17 Cal.4th 119 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
23  Bluestein v. State Bar,
24       13 Cal.3d 162 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
25  Flatt v. Sup.Ct. (Daniel),
26       9 Cal.4th 275 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
27  Responsible Citizens v. Sup.Ct. (Askins),
28       16 Cal.App.4th 1717 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**State Statutes**

Cal. Bus. & Prof. Code § 6125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Code Civ. Proc. § 340.6(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8


**Other Authorities**

CRPC 3-700(A)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

30 Cal. Jur. 3d (2008) Estoppel and Waiver § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Schwarzer, Tashima & Wagstaff,

    Cal. Prac. Guide: Fed. Civ. Pro. Before Trial

        (The Rutter Group 2008)     ¶ 9:159 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                                             ¶ 9:160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                                             ¶ 9:164. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                                             ¶ 9:170 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                                             ¶ 9:171 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                                             ¶ 9:194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                                             ¶ 9:196 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                                             ¶ 9:197.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Vapnek, Tuft, Peck & Wiener,

    Cal. Prac. Guide: Professional Responsibility

        (The Rutter Group 2008)     ¶ 3:47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                                             ¶ 10:73 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1  **I.    <u>INTRODUCTION</u>**

2          Each of Defendants' five challenges to the Complaint is merciless, and their motion to

3  dismiss should be denied.

4          Defendants' first, Fed. R. Civ. P. 12(b)(6) statute of limitations challenge fails because

5  the expiration of the statute cannot be determined from the face of the Complaint. Accordingly,

6  a motion to dismiss should not be granted. Further, the limitations period did not expire, given

7  statutory tolling under California law.

8          Defendants' second, Fed. R. Civ. P. 12(b)(7) failure to join necessary parties challenge

9  fails, because Defendants have not met their burden of proof – and cannot meet their burden of

10 proof – of showing that the purportedly "missing" parties are indispensable under Fed. R. Civ.

11 P. 19.

12         Defendants' third, real party in interest challenge fails, because the purported "missing"

13 parties are not real parties in interest under Fed. R. Civ. P. 17.

14         Defendants' fourth, Article III standing challenge fails because Plaintiff undeniably has

15 standing as the client who suffered injury in fact as result of Defendants' unlicensed practice of

16 law and related misconduct.

17         Defendants' fifth, unclean hands challenge fails, because Defendant cannot assert such

18 a conditional defense by way of a motion to dismiss; and because Defendants have failed to

19 make any showing that Plaintiff acted inequitably.

20         As suggested by the above, and as shown below, Defendants' motion to dismiss is based

21 on gross misrepresentations of the operative facts, and ignores the controlling law. Plaintiff has

22 pending a motion to remand that is scheduled for hearing with Defendants' meritless motion to

23 dismiss. The jurisdictional issues raised by the remand motion should be resolved before the

24 parties and this Court address Defendants' challenge to the Complaint. Accordingly, Plaintiff

25 requested that Defendants stipulate that their motion to dismiss be continued to date that would

26 allow for this Court to rule on the remand motion before Plaintiffs were forced to incur the legal

27 fees and costs of preparing this Opposition.

28         Defendants ignored this request. Accordingly, and assuming that this Court remands this

1  case, the fees and costs that Plaintiff was forced to incur in the preparation and filing of this

2  Opposition should be added to the fees and costs to which Plaintiff is entitled under 28 U.S.C.

3  § 1447(c).

4  **II.     FACTUAL AND PROCEDURAL BACKGROUND**

5         Given the narrow focus of the issues raised by the five pleading challenges asserted by

6  Defendants, the relevant underlying facts and allegations of the Complaint can be summarized

7  briefly.

8         **A.     Defendants Engaged In The Unlicensed Practice Of Law In California**

9         The Complaint names three Defendants: (1) Scott Michael Moore, an individual

10  (Complaint, ¶ 6); (2) Moore International Law Office, A Professional Corporation, a business

11  entity, form unknown (id., ¶ 8); and (3) Moore International Law Office, A Professional

12  Corporation," a California corporation (hereinafter "MILOCA").   Id., ¶ 7.   As the cited

13  allegations of the Complaint indicate, MILOCA was/is a California corporation having its

14  principal place of business in San Francisco, California.

15         The Complaint alleges California state law claims for unfair business practices (First

16  Cause of Action) and legal malpractice (Second Cause of Action) against the three Defendants.

17  These California state law claims are based on the following allegations:

18         ●      None of the Defendants is, or has ever been, admitted to practice law in

19  California.  Complaint, ¶ 13.

20         ●      Between 2001 and at least February, 2007, Defendants practiced law in San

21  Francisco in the guise of "Moore International Law Offices, A Professional Corporation,"

22  operating out of so-named offices in San Francisco.  MILOCA apparently was incorporated by

23  Defendants to facilitate their unlicensed practice of law in this state.  Id.. ¶ 14.

24         ●      Plaintiff Nicholas Parker, a California resident throughout the relevant period,

25  retained Defendants in February, 2003, via MILOCA's offices in San Francisco, to represent him

26  in regards to a dispute arising out of his brother's misappropriation of certain real property

27  located in Honduras.  Id., ¶¶ 17-18; see also Exhibit A to Complaint (February 24, 2003 retainer

28  letter on MILOCA letterhead, with San Francisco address).

1    ●    In the course of said retention, Defendants repeatedly advised Plaintiff in

2    California as to the law of foreign jurisdictions (e.g., Honduras) and the laws of sister states.

3    Throughout said retention (i.e, from 2003 through 2007), Defendants maintained law offices in

4    California, in the guise of "Moore International Law Offices." Id., ¶¶ 19-24.

5    ●    In the course of said representation, Plaintiff paid Defendants over $151,000 in

6    legal fees and costs, in part in connection with a federal district court lawsuit that Defendants

7    filed on Plaintiff's behalf in Florida. Id., ¶ 25.

8    These allegations are sufficient to support causes of action against Defendants for unfair

9    business practices and legal malpractice, based on Defendants having engaged in the unlicensed

10   practice of law in California. See, e.g., Bluestein v. State Bar, 13 Cal.3d 162, 174

11   (1974)("Giving legal advice [in California] regarding the law of a foreign country . . . constitutes

12   the practice of law"; such legal advice by non-admitted attorney constitutes the unlicensed

13   practice of law within the meaning of Cal. Bus. & Prof. Code § 6125); Birbrower, Montalbano,

14   Condon & Frank, P.C. v. Superior Court, 17 Cal.4th 119 (1998)(New York lawyers, not admitted

15   in California, engaged in illegal practice of law when advising California client, in California).[1]

16   **B.    Additional Facts Bearing On The Pleading Challenges Asserted By**

17       **Defendants**

18   As addressed below, certain of Defendants' pleading challenges are based on the

19   theory/claim that the Florida federal court lawsuit referenced above – Nicholas H. Parker, et al.

20   v. F. Bayard Parker, et al., USDC Mid. Dist. FL Case No. 8:04 CV 00041 (hereinafter "Florida

21   Lawsuit") – was filed on behalf of a Parker family trust (the Judith Hockmeyer Trust)

22   (hereinafter "Parker Trust"); and/or that the Parker Ttrust otherwise is a real party in interest to

23

        [1]

24       Given the focus of the pleading challenges asserted by Defendants, this Court does not have
25   to address the issue of whether Defendants' conduct, as alleged, amounts to the unlicensed practice
     of law in California.    Plaintiff notes, however, that to the extent that their position is intelligible,
26   Defendants appear to believe that they could practice law in California – e.g., by maintaining a law
     office in San Francisco for six or more years, out of which they advised and represented California
27   residents such as Plaintiff – provided that Defendants limited their practice to "international matters"
     and/or lawsuits in other jurisdictions.  This assertion is inconsistent with controlling California law
28   cited above.

1    the claims made in this case.

2       Any such contention is demonstrably false.  As the pleadings show, the Florida Lawsuit

3 was filed by Defendants on behalf of <u>Plaintiff in his individual capacity</u>, and on behalf of

4 Plaintiff's brother, John Parker, in his individual capacity.  <u>See, e.g.</u>, attached Declaration of Neil

5 Gieleghem ("Gieleghem Decl."), ¶ 2, Exh. A (Florida Lawsuit Complaint).  Further, the relief

6 sought in the Florida Lawsuit was damages <u>to be awarded to Plaintiff and John Parker in their</u>

7 <u>individual capacities</u>, not any recovery to or on behalf of the Parker Trust.  <u>See</u>, Exh. A (Florida

8 Lawsuit Complaint), pgs. 23-25.[2]

9       Consistent with this, the Judgments that ultimately were entered in the Florida Lawsuit

10 were entered on behalf of Plaintiff and his brother, not on behalf of the Parker Trust.  <u>See</u>

11 Gieleghem Decl., ¶ 3,  Exh. B (March 15, 2007 letter from Defendants, attaching Judgments).

12       The Complaint references the Parker Trust (Judith Hockmeyer Trust) by name in several

13 places, but only in the context of Plaintiff's brother, F. Bayard Parker (the defendant in the

14 Florida Lawsuit), having fraudulent induced Plaintiff and John Parker to authorize payments to

15 him out of the Trust.  <u>See, e.g.</u>, Exh. A (Complaint), ¶ 18, p. 7, lns. 17-20; ¶ 22, p. 9, lns. 3-6.

16 Nothing in the Complaint remotely suggests that there was an attorney-client relationship

17 between the Parker Trust, on the one hand; and Defendants herein, on the other hand, such that

18 the Trust would have standing to assert the legal malpractice and unfair business practices causes

19 of action alleged by Plaintiff.

20      **C.**    <u>**Defendants Ignored Plaintiff's Meet-And-Confer**</u>

21       Plaintiff received Defendants' motion to dismiss, with Defendants' removal papers, on

22 or about April 15, 2008.  <u>See</u> Gieleghem Decl., ¶ 4.  Defendants' motion papers did not give any

23 notice of a hearing date. On April 15, 2008, in connection with Plaintiff's attempt to meet-and-

24 confer with Defendants as to their improper removal, Plaintiff notified Defendants that Plaintiff

25 was under no obligation to respond to the motion to dismiss until service of a notice of hearing

26

27     [2]

28       The Complaint filed by Defendants in the Florida Lawsuit in January 2004 lists their office address as 388 Market Street, San Francisco, CA.  <u>See</u> Gieleghem Decl., Exh. A, pgs. 1 & 25.

on the same.  <u>See</u> Gieleghem Decl., ¶ 4, Exh. C (April 15, 2008 fax letter).

Plaintiff received no response from Defendants, and began to prepare his motion to remand in anticipation of a June 6, 2008 hearing date for the same.  However, shortly before the anticipated remand motion was ready for filing and service, Plaintiff received notice, via the PACER system, that Defendants' motion to dismiss had been set for hearing on June 4, 2008. <u>See</u> Gieleghem Decl., ¶ 5.

Plaintiff completed his remand motion, setting it for hearing on same June 4, 2008 date (the earliest practicable date) to preserve the resources of both this Court and the parties. However, the pendency of the two motions meant that, unless the motion to dismiss was continued, Plaintiff would be forced to prepare an opposition to the motion to dismiss before this Court ruled on the jurisdictional issues raised by the remand motion.  <u>See</u> Gieleghem Decl., ¶ 6.

Accordingly, and in an effort to avoid incurring potentially unnecessary fees and costs, Plaintiff on April 24, 2008 requested that Defendants stipulate that their motion to dismiss could be continued to a workable date (e.g., 30 days) after this Court had ruled on the remand motion. <u>See</u> Gieleghem Decl., ¶ 7, Exh. D (April 24, 2008 letter).  Plaintiff warned Defendants that, if they refused to so stipulate, and the remand motion was granted, Plaintiff would seek the fees and costs incurred in preparing such an opposition pursuant to 28 U.S.C. § 1447(c).  <u>Id.</u>

Defendants ignored this request, which forced Plaintiff to prepare and file this Opposition, thereby potentially increasing the fees and costs that would be incurred by Plaintiff if the case is remanded.  <u>Id.</u>

### III.  <u>LEGAL ANALYSIS</u>

**A.  <u>Defendants' Fed. R. Civ. P. 12(b)(6) Limitations Challenge Should Be Denied, Because The Alleged Expiration Of The Statute Cannot Be Determined From The Face Of The Complaint; And Because Plaintiff's Claims Are Not Time-Barred Given Statutory Tolling</u>**

Defendants cannot raise a statute of limitations challenge by way of a Fed. R. Civ. P.

12(b)(6) motion to dismiss, because the alleged expiration of the statute cannot be determined from the face of the Complaint.  Under such circumstances, a statute of limitations challenge must be raised by way of a motion for summary judgment, not a motion to dismiss.  See Schwarzer, Tashima & Wagstaff, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2008) ¶ 9:194 (citing AVCO Corp. v. Precision Air Parts, Inc., 676 F.2d 494, 495 (11th Cir. 1982); Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995)).

The Complaint alleges that Defendants withdrew "from the representation on or about March 15, 2007, by way of a letter bearing that date which they sent to Plaintiff by courier."  See Complaint, ¶ 28, p. 8, lns 1-3.  For the purposes of a Fed. R. Civ. P. 12(b)(6) motion to dismiss based on a statute of limitations challenge, these well-pleaded allegations must be taken at face value.  Further, and as shown below, these allegations are demonstrably true.

Defendants concede that, under California law, the statute of limitations on a legal malpractice claim is tolled as long as "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."  See Cal. Code Civ. Proc. § 340.6(a)(2); see Defendants' MPA, p. 8.  The Complaint was filed on or about March 14, 2008, i.e., less than one year after the termination of the representation as alleged in the Complaint.  Hence, on the face of the pleading, the Complaint is not time barred, and Defendants can assert such an alleged limitations bar only by way of a summary judgment motion.  Accordingly, Defendants' motion to dismiss should be denied.

This is not merely a "procedural defense," because any such summary judgment motion would be patently meritless.  The facts are that Defendants did not withdraw from the representation until the March 15, 2007 date stated, by way of the letter alleged.  That March 15, 2007 letter states:

> This letter is to regretfully, effective immediately this date [i.e., March 15, 2007], resign, withdraw and terminate representation under our engagement letter dated 24 February 2003 . . . .

See Gieleghem Decl., Exh.  B (March 15, 2007 letter), p. 1 (underlining added).  This express

and unequivocal admission that the representation did not end until March 15, 2007 is binding on Defendants.

Defendants try to argue around this admission by claiming that the representation ended at an earlier date, when they were contacted by Plaintiff's current counsel (Neil Gieleghem, Esq.) as part of his attempt to obtain information from Defendants as to their handling of the underlying case. See Defendants' MPA, pgs. 5-6.    This argument fails, because the communications in question – even as characterized by Defendants – cannot be reasonably interpreted as terminating the representation.

The "evidence" on which Defendants base their "earlier termination" argument consists of the following paragraphs from Defendant Scott M. Moore's supporting Declaration:

> 8.      On the 8th, 9th, and 12th of March, 2007, Neil Gieleghem, attorney for Nicholas H. Parker in this action, placed surprise and adversarial telephone voice mail messages for me in New York, while I was engaged in other matters, and I was not informed prior thereto that Nicholas H. Parker had hired Attorney Gieleghem.
>
> 9.      In the voice mail message left for me by Attorney Neil Gieleghem on the 12th of March, 2007, Mr. Gieleghem specifically stated that he represented Nicholas H, Parker, and that there was to be no transaction regarding the Honduran property without authorization from Attorney Gieleghem.

See Moore Decl., ¶¶ 8-9.

Defendants now claim that they were "given to understand on the 12th of March, 2007, that [their] representation was effectively ended" as of that date. See Moore Decl., ¶ 10. But this is not what Defendants communicated to Plaintiff in their March 15, 2007 letter.[3]

Reduced to its essentials, Defendants' position is that a legal representation ends, such that the statute of limitations begins to run, whenever the attorney subjectively decides that the

---

[3]

With this Opposition Plaintiff is filing Objections to the Moore Declaration.

attorney-client relationship is over; and that this "subjective termination date" controls for statute of limitations purposes, even if the attorney communicated a different, later date to the client, and never disclosed his "subjective decision." Defendants offer no legal support for this argument, because there is none. Indeed, the controlling law is to the contrary. See, e.g., Vapnek, Tuft, Peck & Wiener, Cal. Prac. Guide: Professional Responsibility (The Rutter Group 2008) ¶ 10:73 (given ethical requirement, under CRPC 3-700(A)(2), to avoid foreseeable prejudice to the client, recommended steps for withdrawal, where no litigation pending, include written notice to client that representation has ended and that client file will be provided); Cf. id., ¶ 3:47 (in determining when attorney-client relationship commences, some courts look to client's reasonable expectations, citing Responsible Citizens v. Sup.Ct. (Askins), 16 Cal.App.4th 1717, 1733 (1993); Flatt v. Sup.Ct. (Daniel), 9 Cal.4th 275, 281 (1994)).

In addition, Defendants are estopped from claiming that the representation ended prior to March 15, 2007. The principles of equitable estoppel are well established. An estoppel is applicable where the conduct of one side has induced the other side to take such a position that the latter would be injured if the first side should be permitted to repudiate its acts. Application of the doctrine depends on the particular facts of each case, and estoppel is available in actions at law as well as suits in equity. See generally 30 Cal. Jur. 3d (2008) Estoppel and Waiver § 3.

Here, Defendants expressly and unequivocally told Plaintiff that the representation ended on March 15, 2007. Plaintiff reasonably relied on that statement of position (in terms of calendaring the deadline for the filing of their malpractice claim). Accordingly, Defendants are estopped from arguing that the representation ended at an earlier date.[4]

---

[4] The statutory tolling under Cal. Civ. Proc. Code § 340.6 makes irrelevant Defendants' conclusory and unsupported allegations to the effect that Plaintiff knew at an earlier date that Defendants were engaged in the unlicensed practice of law. Even if Plaintiffs knew that Defendants could not practice law in California (by maintaining an office in San Francisco, etc.), the statute of limitations was tolled until the representation ended.

Further, Defendants' "earlier knowledge" argument is based on the theory that Plaintiff, as a lay client, was placed "on notice" by Defendants' letterhead that Defendants could not practice

1

2

### B.    Plaintiff Has Not Failed To Join Fed. R. Civ. P. 19 Necessary Parties

3

A Fed. R. Civ. P. 12(b)(7) motion to dismiss for failure to join a party should be granted

4

only if the court determines: (1) joinder of the party is not possible, and (2) the party is, in fact,

5

"indispensable."  Cal. Practice Guide: Fed. Civ. Pro. Before Trial, supra, ¶ 9:159 (citing

6

Shermoen v. United States, 982 F.2d 1312, 1317 (9th Cir. 1992); Thomas v. United States, 189

7

F.3d 662, 667 (7th Cir. 1999)).

8

Accordingly, if the party is merely "necessary," a motion to dismiss should be denied

9

"except in the most exceptional cases," even if the necessary party cannot be joined.  Cal.

10

Practice Guide: Fed. Civ. Pro. Before Trial, supra, ¶ 9:160 (citing Shelton v. Exxon Corp., 843

11

F.2d 212, 216 (5th Cir. 1988)).[5]

12

The burden of proof is on the party moving to dismiss for failure to join an indispensable

13

party.  Cal. Practice Guide: Fed. Civ. Pro. Before Trial, supra, ¶ 9:170 (citing Ilan-Gat

14

Engineers, Ltd. v. Antigua Int'l Bank, 659 F.2d 234, 240 (DC Cir. 1981).  A Fed. R. Civ. P. 19

15

objection to non-joinder of parties usually requires an evidentiary showing (e.g., affidavits,

16

discovery materials) as to the reasons why the absent party's presence is necessary for a just

17

adjudication.  Cal. Practice Guide: Fed. Civ. Pro. Before Trial, supra, ¶ 9:171 (citing  Hess v.

18

Gray, 85 F.R.D. 15, 21 (ND IL 1979); Dou Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc., 149

19

F.R.D. 185, 187 (D MN 1993)).[6]

20

---

21

law in California in the manner alleged.  See Defendants' MPA, p. 3, lns. 1-8 (references to

22

Defendants' letterhead, attached as Exhibit A to Complaint); p. 6, ln. 23 - p. 7, ln. 2 ("letterhead

notice" argument).  This argument is specious, particularly given Defendants' continuing assertion

that they could practice out of a California office as "international attorneys."

23

[5]

24

A motion to dismiss also should be denied where the absent party (whether necessary or

25

indispensable) is subject to service of summons, and his or her joinder would not deprive the court

of subject matter jurisdiction.  The motion to dismiss will be treated as a motion to compel joinder

26

of the absent party, and plaintiff will be granted leave to add the party to his or her action.  Cal.

Practice Guide: Fed. Civ. Pro. Before Trial, supra, ¶ 9:161 (citing Cunningham v. Municipality of

27

Metropolitan Seattle, 751 F.Supp. 885, 896–897 (WD WA 1990)).

[6]

28

As a practical matter, a defendant normally will file such a motion only if the joinder will

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, ETC., CASE NO.
3:08-CV-01896-PJH

Defendants' Fed. R. Civ. P. 19 challenge is based on the theory that the Parker Trust, and its two other beneficiaries in addition to Plaintiff, are necessary parties. <u>See</u> Defendants' MPA, p. 9, ln. 19 - p. 20, ln. 2. As shown above, however, the Parker Trust was not a party to the Florida Lawsuit, or a client of Defendants. Accordingly, neither the Trust, nor any beneficiaries of the Trust *sub nomine*, would have standing to assert similar claims against Defendants.

Defendants have not met their burden of proof of showing that (1) joinder of the Parker Trust and/or the other beneficiaries is not possible; and (2) the Trust and/or the other beneficiaries are, in fact, "indispensable." Accordingly, Defendants' motion to dismiss on this ground also should be denied.

**C.    <u>Plaintiff Is The Fed. R. Civ. P. 17 Real Party In Interest</u>**

Defendants' real party in interest argument is based on the theory that the real party in interest is the Parker Trust, because Trust funds allegedly were used by Plaintiff to pay Defendants. <u>See</u> Defendants' MPA, p. 10, ln. 8-11.

This argument ignores that the underlining retention was between Plaintiff as the client, on the one hand; and Defendants as alleged attorneys, on the other hand. Plaintiff may have authorized payment of Defendants' legal invoices by using Trust monies, but this does not make the Parker Trust a real party in interest to Plaintiff's claims for unfair business practices (based on unlicensed practice of law) and legal malpractice against Defendants based on that retention.

The Parker Trust is no more a real party in interest in this case than would be a bank from which Plaintiff had borrowed the money required to pay Defendants the $150,000 in legal fees and costs they ran up in the Florida Lawsuit. Defendants have offered no legal authorities or analysis that would support a different conclusion.

\ \ \

---

result in dismissal. Otherwise, the parties' presence could be achieved through defendant's own claims (e.g., impleader or cross-claim). <u>Cal. Practice Guide: Fed. Civ. Pro. Before Trial</u>, <u>supra</u>, ¶ 9:164.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, ETC., CASE NO. 3:08-CV-01896-PJH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.    Plaintiff Has Article III Standing**

Defendants' Article III standing argument presumably is brought under Fed. R. Civ. P. 12(b)(1),[7] and is based on two theories: (1) Plaintiff allegedly has not suffered "injury in fact" because the Judgment that Defendants obtained "may" be enforceable, such that all of Plaintiff's claimed damages are "purely conjectural" (see Defendants' MPA, p. 11, lns. 3-11); and (2) there allegedly is no "casual connection between the injury and conduct complained of," because "the [Parker Trust] is an independent party not before the Court." Id., lns. 12-18.  Both these arguments are meritless.

Whether the Judgment is, or is not, collectable is irrelevant to the damages Plaintiff suffered by paying Defendants over $150,000 in legal fees that they were not entitled to charge or collect.  Further, and as shown above, Defendants have not made any showing that the Parker Trust has any standing in regards to Plaintiff's claims, whether as a Fed. R. Civ. P. 19 necessary party, a Fed. R. Civ. P. 17 real party in interest, or otherwise.

**E.    Defendants Cannot Assert The Conditional Defense Of "Unclean Hands" By Way Of A Fed. R. Civ. P. 12(b)(6) Motion; And Plaintiff Did Not Act Inequitably In Any Event**

Defendants' unclean hands argument is a conditional defense that cannot be asserted by way of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Cal. Practice Guide: Fed. Civ. Pro. Before Trial, supra, ¶ 9:197.1 (where defense disclosed in complaint is conditional rather than absolute, a Fed. R. Civ. P. 12(b)(6) motion to dismiss should be denied, citing McCalden v. California

---

[7]

Defendants reference Fed. R. Civ. P. 12(b)(1) in their Notice of Motion, possibly in reliance on cases holding that a lack of standing challenge should be brought under Rule 12(b)(1) because standing is a jurisdictional matter. Cal. Practice Guide: Fed. Civ. Pro. Before Trial, supra, ¶ 9:196 (citing Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88, fn. 6 (2nd Cir. 2006)).

The Ninth Circuit, however, holds that a Fed. R. Civ. P. 12(b)(6) motion to dismiss lies where the complaint reveals on its face that plaintiff lacks standing. Cal. Practice Guide: Fed. Civ. Pro. Before Trial, supra, ¶ 196 (citing Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 771 (9th Cir. 2006)).

---

1    Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990).

2        In McCalden, supra, the complaint alleged the defendant's breach of contract, as well as

3    facts showing threats of violence from third parties that may have made the defendant's

4    performance impossible (excusing defendant's breach).  But these allegations disclosed only a

5    conditional defense because, to claim impossibility, the defendant would have to show it took

6    reasonable measures to perform despite the danger.  The plaintiff, however, was under no duty

7    to plead this, and such facts lay outside the pleadings.  Accordingly, the complaint was not

8    subject to dismissal.  955 F.2d at 1219.

9        The same analysis, and the same result, applies here.  Defendants' unclean hands

10    argument is based on matters outside of the allegations of the Complaint.  In effect, Defendant

11    is attempting what amounts to a "stealth" summary judgment motion, without complying the

12    procedural or substantive requirements.

13        Plaintiff's position is, once again, not merely a "procedural defense."  Any such summary

14    judgment, based on "unclean hands" or any other equitable defense, would be meritless.  The

15    purported "bad faith" alleged by Defendants has nothing to do with the latter's unlicensed

16    practice of law in California.  See Defendants' MPA, p. 12, lns. 1-15.  Instead, the purported

17    "bad faith" claimed by Defendants amounts to nothing more than unsupported and conclusory

18    assertions that Plaintiff  made "strategic decisions" in regards to the Florida Lawsuit, and/or

19    chose not to enforce an uncollectable judgment.  Id.  Even if true, these allegations do not bar

20    Plaintiff from pursuing claims against Defendants for unfair business practices based on the

21    unlicensed practice of law, and for the malpractice committed by Defendants in the course of that

22    representation.

23    F.    **Plaintiff Is Entitled To Recover His Just Costs And Actual Expenses,**

24          **Including Attorney Fees, Incurred In Responding To Defendants' Motion**

25        28 U.S.C. § 1447(c) provides, in pertinent part: "If at any time before final judgment it

26    appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An

27    order remanding the case may require payment of just costs and any actual expenses, including

28

attorney fees, incurred as a result of the removal." <u>See also</u> <u>Morris v. Bridgestone/Firestone, Inc.</u>, 985 F.2d 238, 240 (6th Cir. 1993).

The statutory purpose of such an award of costs and fees is to deter the possibility of abuse, unnecessary expense and harassment if a defendant removes improperly. <u>Circle Industries USA, Inc. v. Parke Const. Group, Inc.</u>, 183 F.3d 105, 109 (2nd Cir. 1999). Although an award of fees and costs under 28 U.S.C. § 1447(c) is not mandatory, such an award does <u>not</u> require a showing of that the removal was "frivolous," "vexatious," lacked an "objectively reasonable basis," or was made in "bad faith," as required by other theories/grounds under which sanctions might be imposed. <u>Moore v. Permanente Medical Group, Inc.</u>, 981 F.2d 443, 446 (9th Cir. 1992); <u>Morgan Guar. Trust Co. v. Republic of Palau</u>, 971 F.2d 917, 923-924 (2nd Cir. 1992); <u>Tenner v. Zurek</u>, 168 F.3d 328, 329-330 (7th Cir. 1999); <u>Suder v. Blue Circle, Inc.</u>, 116 F.3d 1351, 1352 (10th Cir. 1997).

"Just costs" under 28 U.S.C. § 1447(c) include filing fees, service of process fees, and attorneys fees, regardless of whether the plaintiff has in fact paid such fees, e.g., where the case is being handled on a contingency fee or pro bono basis. <u>See</u> <u>Gotro v. R & R Realty Group</u>, 69 F.3d 1485, 1448 (9th Cir. 1995); <u>see also</u> <u>Tenner v. Zurek</u>, <u>supra</u>, 168 F.3d 328 at 320 (just costs include document preparation expenses and travel costs).

Because Defendants improperly removed this case, and then refused to stipulate to continue the hearing on their motion to dismiss until after the jurisdictional issue had been resolved, Plaintiff was forced to incur the attorneys fees and costs required to prepare and file this Opposition. Under such circumstances, on remand these additional fees and costs should be included in those sought by Plaintiff in his pending remand motion pursuant to 28 U.S.C. § 1447(c).

As of the filing of this Opposition, Plaintiff has incurred $6673.56 in attorney fees and costs in connection with Defendants' motion to dismiss, as documented in the attached Gieleghem Declaration. <u>See</u> Gieleghem Decl., ¶ 8. Plaintiff anticipates incurring an additional $350.00 through any hearing on this motion. <u>See</u> Gieleghem Decl., ¶ 9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Accordingly, Plaintiff respectfully requests that, in addition to denying Defendants' motion to dismiss, this Court order, in connection with any remand, that Defendants to reimburse Plaintiff said fees and costs pursuant to 28 U.S.C. § 1447(c), which fees and costs will total $7023.56 through hearing.  Gieleghem Decl., ¶¶ 8-9.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss; and order Defendants, pursuant to 28 U.S.C. § 1447(c), to reimburse Plaintiff his just costs and expenses, including attorney fees, in the amount of $7023.56 through hearing, should this case be remanded.


Dated: May 9, 2008                                        GIELEGHEM LAW OFFICE



                                                          s/ Neil Gieleghem
                                                          Neil Gieleghem
                                              Attorneys for Plaintiff Nicholas H. Parker

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, ETC., CASE NO.
3:08-CV-01896-PJH

## DECLARATION OF NEIL GIELEGHEM

I, Neil Gieleghem, declare:

1.      I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would testify competently thereto.  I am an attorney at law duly admitted to practice before all the courts of the State of California, and the United States District Courts, and I am counsel of record for Plaintiff Nicholas Parker.

2.      Attached hereto as Exhibit A is a true and correct copy of what I am informed and believe, after reasonable inquiry, is the Complaint filed in <u>Nicholas H. Parker, et al. v. F. Bayard Parker, et al.</u>, USDC Mid. Dist. FL Case No. 8:04 CV 00041 (hereinafter "Florida Lawsuit"), in which Defendants were counsel of record for Plaintiff herein.  I obtained this Complaint from the client case file that was forwarded to this office by Defendants.

3.      Attached hereto as Exhibit B is a true and correct copy of a March 15, 2007 letter from Defendants to Plaintiff (copy to me), which letter attached the Judgments Defendants claim were entered in the Florida Lawsuit.

4.      I received Defendants' motion to dismiss, with Defendants' removal papers, on or about April 15, 2008.  Defendants' motion papers did not give any notice of a hearing date.  On April 15, 2008, in connection with Plaintiff's attempt to meet-and-confer with Defendants as to their improper removal, I notified Defendants, by a letter faxed on or about that date, that Plaintiff was under no obligation to respond to the motion to dismiss until service of a notice of hearing on the same.  A true and correct copy of my April 15, 2008 letter to Defendants is attached hereto as Exhibit C.

5.      I received no response from Defendants as to my April 15, 2008 letter, and began to prepare Plaintiff's motion to remand in anticipation of a June 6, 2008 hearing date for the same.   On or about April 24, 2008, however, I received notice, via the PACER system, that this case had been reassigned to Hon. Phyllis J. Hamilton, and that Defendants had noticed their Motion to Dismiss for hearing on June 4, 2008.

6.      On receiving notice of the June 4, 2008 hearing, I completed Plaintiff's remand

motion, setting the same for hearing on same June 4, 2008 date (the earliest practicable date) to preserve the resources of both this Court and the parties.  However, the pendency of the two motions meant that, unless the motion to dismiss was continued, Plaintiff would be forced to prepare an opposition to the motion to dismiss before this Court ruled on the jurisdictional issues raised by the remand motion.

7.    Accordingly, and in an effort to avoid incurring potentially unnecessary fees and costs, on or about  April 24, 2008 I requested, by way of a faxed letter, that Defendants stipulate that their motion to dismiss could be continued to a workable date (e.g., 30 days) after this Court had ruled on the remand motion.  A true and correct copy of my April 24, 2008 letter is attached hereto as Exhibit D.  Defendants ignored this request, which forced Plaintiff to prepare and file this Opposition, thereby increasing the fees and costs that would be incurred by Plaintiff on removal.

8.    My billing rate in this case is $350.00.  As of the filing and service of this Opposition, Plaintiff has incurred the following fees and costs in connection with Defendants' motion to dismiss:

Work Performed/Costs

April 24, 2008        Prepare meet-and-confer letter to Defendants re stipulation to continue hearing on Defendants' motion to dismiss; calendar hearing and opposition deadlines.

Time:  .5 hrs @ $350/hr =            $175.00

Fax: 3 pgs. @ .25      =            .75

April 25, 2008:       Review email from client re removal and motion to dismiss; review USDC ND CA Local Rules re pro hac admission requirements and service of application; t/c from court clerk (Nicole) re e-filing issue.

Time:  .5 hrs @ $350/hr =            $175.00

April 29, 2008          Drafting of opposition to motion to dismiss; on-line legal research (Westlaw) re.

                      Time:  1.8 hrs @ $350/hr =          $630.00

                      Westlaw charges:                    $50.00

May 4, 2008:            Further on-line legal research (Westlaw) re Fed. R. Civ. P. 12(b)(1), (6) and (7) motions to dismiss; drafting of opposition to motion to dismiss; emails to/from client re issues related to motion to dismiss.

                      Time:  5.1 hrs @ $350/hr =          $1785.00

                      Westlaw charges:                    $65.00

May 5, 2008:            Further on-line legal research (Westlaw) re case authorities for opposition; further drafting of opposition brief; additional emails to/from client re issues raised by motion to dismiss.

                      Time:  2.8 hrs @ $350/hr =          $980.00

                      Westlaw charges:                    $40.00

May 6, 2008             Review fax from Trust's counsel relating to motion to dismiss issues (standing); t/c office of Trust's counsel re same; email to client re; review court filings by Defendants via PACER.

                      Time:  .6 hrs @ $350.00 =           $210.00

                      PACER charges:                     .54

                      Fax:    4 pgs. @ .25/pg.            1.00

May 7, 2008             Further drafting opposition; on-line legal research (Westlaw); preparation of Objections to Moore Declaration and Objections

to Pro Hac Vice admission.

|  | Time:  5.5 hrs @ $350.00 = | 1925.00 |
|--|--|--|
|  | Westlaw charges: | $45.00 |

May 9, 2008:    Coordinate duplication and service; Overnight mail Chambers

Copies to Court; efiling, etc.

|  | Time: 1.5 hrs @ $350.00 = | $525.00 |
|--|--|--|
|  | Copying: 240 pgs @ .22/pg | $52.80 |
|  | Postage: | .97 |
|  | Overnight mail to Court |  |
|  | (Chambers Copies) | $12.50 |

Total as of Opposition filing:                                    $6673.56

9.      In addition, Plaintiff anticipates that, if Defendants' motion to dismiss proceeds
to hearing, Plaintiff will incur the following additional fees and costs:

Work Peformed/Costs

[Anticipated]    Review of Defendants' Reply papers; preparation for hearing on

motion to dismiss issues.

|  | Time:  1 hrs @ $350/hr = | $350.00 |
|--|--|--|

Total through hearing:                                         $7023.56

10.     The above-referenced fees and costs are separate from any fees and costs incurred
by Plaintiff in connection with his pending Motion to Remand, which fees and costs are detailed
in his pleadings on said Motion.

\ \ \

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare, under penalty of perjury under the laws of the State of California and the federal law, that the foregoing is true and correct.

Executed on this 9th day of May, 2008, at Los Angeles, California.

                                        s/ Neil Gieleghem

                                        NEIL GIELEGHEM

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, ETC., CASE NO. 3:08-CV-01896-PJH

PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

     I am a resident of the State of California; over the age of 18 years; and not a party to the within action; and my business address is: 1875 Century Park East, Suite 300, Los Angeles, California 90067.

     On May 9, 2008  I served the foregoing document described as:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; DECLARATION OF NEIL GIELEGHEM**

[X]    (BY MAIL ) By placing the true copies of the document(s) listed above in a sealed envelope, fully prepaid, addressed to the recipient(s) listed below. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in said affidavit.

[ ]    (BY FAX) By transmitting, on this date, via facsimile, the document(s) listed above to the fax number(s) set forth above.

[  ]   (BY EXPRESS MAIL) By placing the document(s) listed above in a sealed Overnight Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an Overnight Express agent for delivery.

[ ]    (BY ELECTRONIC TRANSMISSION) By transmitting via electronic mail the document(s) listed above to each recipient listed below.

[  ]   (BY PERSONAL SERVICE) I delivered such envelope by hand to the office of the addressee.

Scott Michael Moore, Esq.
Moore International Law Offices, P.C.
45 Rockefeller Plaza, Suite 2000
(630 5th Avenue, Suite 2000)
New York, New York 10111
Tel: (212) 322-3474
Fax: (212) 332-3475
smm@MILOPC.com
Attorneys for Defendants

     I declare under penalty of perjury under the laws of the State of California, and the United States of America, that the above is true and correct.

     Executed on May 9, 2008, in Los Angeles, CA.

                            _____
                            s/ Neil Gieleghem
                            Neil Gieleghem

**EXHIBIT A**
[Complaint filed in <u>Nicholas H. Parker, et al. V. F. Bayard Parker, et al.</u>, USDC Mid. Dist. FL Case No. 8:04 CV 00041 ("Florida Lawsuit")]

FILED

1  Scott Michael Moore, Esq.
   MOORE INTERNATIONAL LAW OFFICES
2  A Professional Corporation
   388 Market Street, Suite 500
3  San Francisco, CA 94111
   T. 415-623-2766
4  F. 415-623-2767
   E. smm@MILOPC.com
5
   Counsel for Plaintiffs
6

7              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
8                   TAMPA DIVISION

9  NICHOLAS H. PARKER, an          )  Case No.: 8 04CV D0041-T26MSS
   individual, and citizen and     )
10 resident of the State of        )  Hon.:
   California, U.S.A., and,         )
11                                  )  COMPLAINT
   JOHN S. PARKER, an individual,  )
12 and citizen and resident of the )
   State of North Carolina,        )
13 U.S.A.,                         )
                                    )
14                                  )
          Plaintiffs,               )
15                                  )
     v.                             )
16                                  )
   F. BAYARD PARKER, an            )
17 individual, and citizen and     )
   resident of the State of        )
18 Florida, U.S.A., and,           )
                                    )
19 CENTURY 21 J. EDWARDS REAL      )
   ESTATE, a/k/a, J. EDWARDS REAL  )
20 ESTATE, a business entity       )
   organized under the laws of the )
21 Republic of Honduras, with its  )
   principal place of business and )
22 residence in the Republic of    )
   Honduras, jointly and           )
23 severally,                      )
                                    )
24                                  )
          Defendants.               )
25                                  )

                                    -1-

1    NOW COMES NICHOLAS H. PARKER, PLAINTIFF, and JOHN S.

2   PARKER, PLAINTIFF, (collectively, PLAINTIFFS), by and through

3   counsel, MOORE INTERNATIONAL LAW OFFICES, P.C., and complains

4   against F. BAYARD PARKER, DEFENDANT, and CENTURY 21 J. EDWARDS

5   REAL ESTATE, a/k/a, J. EDWARDS REAL ESTATE, DEFENDANT,

6   (hereinafter, CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT),

7   (collectively, DEFENDANTS), and states as follows:

8                        JURISDICTION & VENUE

9        1.    That NICHOLAS H. PARKER, PLAINTIFF, is an individual,

10  and citizen of the State of California, with residence in the

11  County of San Francisco, at 1275 2nd Ave., Apt. 5, San Francisco,

12  California, 94122, U.S.A.;

13       2.    That JOHN S. PARKER, PLAINTIFF, is an individual, and

14  citizen of the State of North Carolina, with residence in the

15  County of Buncombe, at Route 1, Reeds Creek Road, Fairview,

16  North Carolina, 28730, U.S.A.;

17       3.    That F. BAYARD PARKER, DEFENDANT, is an individual,

18  and citizen of the State of Florida, with residence in the

19  County of Hillsborough, at 14932 Laurie Lane, Tampa, Florida,

20  33613, U.S.A.;

21       4.    That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, is

22  a business entity organized under the laws of the Republic of

23  Honduras, with its principal place of business and residence

24  located at Roatan, Bay Islands, Republic of Honduras, and is a

25  non-resident of the State of Florida;

-2-

```
)                                    )
```

1    5.    That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, is

2    a Century 21 real estate agency and did commit tortuous acts

3    complained of herein in the State of Florida;

4    6.    That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, did

5    engage in business in the State of Florida, by, among other

6    things, publicly advertising and using the Florida mailing

7    address of Hyde Shipping Corp., 10025 N.W. 116th Way (Suite 2),

8    Medley, State of Florida, 33178, U.S.A., which is a corporation

9    organized under the laws of the State of Florida, with its

10    principal place of business located at said address in the State

11    of Florida;

12    7.    That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, did

13    engage in business in the State of Florida, by, among other

14    things, representing F. BAYARD PARKER, DEFENDANT, as sales

15    listing agent for the property, and during email communications

16    between the DEFENDANTS, F. BAYARD PARKER, DEFENDANT, was located

17    at his residence in Tampa, State of Florida, and representatives

18    of CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, were located at

19    its principal place of business and residence located at Roatan,

20    Bay Islands, Republic of Honduras, including:

21    a.    An email dated 4 November 2002 from Don Pearly,

22    sales representative of CENTURY 21 J. EDWARDS REAL

23    ESTATE, DEFENDANT to F. BAYARD PARKER, DEFENDANT, from

24    email address ptp@globalnet.hn to guanaja1@hotmail.com,

25    respectively;

)                                          )

1        b.    An email dated 16 November 2002 from Don Pearly,

2    sales representative of CENTURY 21 J. EDWARDS REAL

3    ESTATE, DEFENDANT to F. BAYARD PARKER, DEFENDANT,

4    copying Al Johnson, manager of CENTURY 21 J. EDWARDS

5    REAL ESTATE, DEFENDANT, from email address

6    ptp@globalnet.hn, to  guanaja1@hotmail.com, with copy

7    to aljohnson@globalnet.hn, respectively;

8        c.    An email dated 30 January 2003 from Don Pearly,

9    sales representative of CENTURY 21 J. EDWARDS REAL

10   ESTATE, DEFENDANT to F. BAYARD PARKER, DEFENDANT, from

11   email address ptp@globalnet.hn to guanaja1@hotmail.com,

12   respectively;

13       8.    That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, did

14   engage in business in the State of Florida, by, among other

15   things, owning and maintaining an escrow bank account at a

16   financial institution located in the State of Florida, and

17   recommended to F. BAYARD PARKER, DEFENDANT, that deposit and

18   pay-off funds for sale of the property be placed in and

19   disbursed from said escrow account, as stated in the email dated

20   30 January 2003 from Don Pearly, sales representative of CENTURY

21   21 J. EDWARDS REAL ESTATE, DEFENDANT, to F. BAYARD PARKER,

22   DEFENDANT, from email address ptp@globalnet.hn to

23   guanaja1@hotmail.com, respectively;

24       9.    That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, did

25   otherwise engage in business in the United States, by, among

1  other things, bringing Stewart Title Company of America and

2  financial lenders to service its clients in the Bay Islands,

3  Republic of Honduras, as stated in the email dated 4 November

4  2002 from Don Pearly, sales representative of CENTURY 21 J.

5  EDWARDS REAL ESTATE, DEFENDANT to F. BAYARD PARKER, DEFENDANT,

6  from email address ptp@globalnet.hn to guanaja1@hotmail.com,

7  respectively, and by communicating with United States buyers and

8  advising on use of its United States escrow bank account to keep

9  deposit and pay-off funds in the United States, as stated in the

10 email dated 30 January 2003 from Don Pearly, sales

11 representative of CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT

12 to F. BAYARD PARKER, DEFENDANT, from email address

13 ptp@globalnet.hn to guanaja1@hotmail.com, respectively;

14      10.   That the property involved in this dispute is

15 comprised of approximately 16.5 acres of waterfront land and is

16 located on the west-end point of the Caribbean island of

17 Guanaja, Bay Islands, Republic of Honduras (the property);

18      11.   That the settlement agreement complained of herein

19 contains a choice of jurisdiction provision as to enforcement in

20 any court of competent jurisdiction in the United States;

21      12.   There are no other pending actions between the

22 parties;

23      13.   This is a civil action for damages where the value

24 exceeds US$75,000, exclusive of interest and costs, of which

25 this court has diversity jurisdiction pursuant to 28 U.S.C.

)                                                    )

1   1332, and venue is permissible in this court pursuant to 28

2   U.S.C. 1391;

3                       CAUSES OF ACTION

4       14.  That on or about 21 August 1993, Judith S. Hockmeyer,

5   resident of the County of Transylvania and State of North

6   Carolina, died and left a Last Will and Testament dated 24 July

7   1986, which in Item II devised and bequeathed, absolutely and in

8   fee simple, all of her property, both real and personal, to her

9   three sons, NICHOLAS H. PARKER, PLAINTIFF, JOHN S. PARKER,

10  PLAINTIFF, and F. BAYARD PARKER, DEFENDANT, in equal shares;

11      15.  That on or about 14 September 1995, F. BAYARD PARKER,

12  DEFENDANT, with knowledge and intent, caused NICHOLAS H. PARKER,

13  PLAINTIFF, to sign a power of attorney in favor of F. BAYARD

14  PARKER, DEFENDANT, by knowingly misrepresenting that F. BAYARD

15  PARKER, DEFENDANT, would cause the title to the property to be

16  transferred to the names of all three sons, NICHOLAS H. PARKER,

17  PLAINTIFF, JOHN S. PARKER, PLAINTIFF, and F. BAYARD PARKER,

18  DEFENDANT, and would cause the property to be sold with the

19  proceeds to be disbursed equally between all three sons,

20  NICHOLAS H. PARKER, PLAINTIFF, JOHN S. PARKER, PLAINTIFF, and F.

21  BAYARD PARKER, DEFENDANT, to carry out the intent and purposes

22  of Item II of Judith S. Hockmeyer's Last Will and Testament;

23      16.  That on or about 18 September 1995, F. BAYARD PARKER,

24  DEFENDANT, with knowledge and intent, caused JOHN S. PARKER,

25  PLAINTIFF, to sign a power of attorney in favor of F. BAYARD

)                                    )

1  PARKER, DEFENDANT, by knowingly misrepresenting that F. BAYARD

2  PARKER, DEFENDANT, would cause the title to the property to be

3  transferred into the names of all three sons, NICHOLAS H.

4  PARKER, PLAINTIFF, JOHN S. PARKER, PLAINTIFF, and F. BAYARD

5  PARKER, DEFENDANT, and would cause the property to be sold with

6  the proceeds to be disbursed equally between all three sons,

7  NICHOLAS H. PARKER, PLAINTIFF, JOHN S. PARKER, PLAINTIFF, and F.

8  BAYARD PARKER, DEFENDANT, to carry out the intent and purposes

9  of Item II of Judith S. Hockmeyer's Last Will and Testament;

10      17.   That on or about 16 April 1997, F. BAYARD PARKER,

11  DEFENDANT, with knowledge and intent, engaged attorney Neptali

12  Mejia Rodriguez, of Tegucigalpa, Republic of Honduras, for the

13  sum of US$12,000, to cause title to the property to be

14  transferred to the sole name of F. BAYARD PARKER, DEFENDANT,

15  even though Neptali Mejia Rodriguez had knowledge of said powers

16  of attorney and Judith S. Hockmeyer's Last Will and Testament;

17      18.   That on or about 1 November 2000, F. BAYARD PARKER,

18  DEFENDANT, with knowledge and intent, induced the approval of

19  the PLAINTIFFS for the Judith S. Hockmeyer Trust to pay US$5,280

20  to F. BAYARD PARKER, DEFENDANT, by claiming costs and expenses

21  incurred in carrying out his duties under said powers of

22  attorney, when F. BAYARD PARKER, DEFENDANT, had previously

23  engaged attorney Neptali Mejia Rodriguez to cause title to the

24  property to be transferred to the sole name of F. BAYARD PARKER,

25  DEFENDANT;

)                                    )

19.   That on or about 12 December 2001, in furtherance of said engagement of attorney Neptali Mejia Rodriguez by F. BAYARD PARKER, DEFENDANT, attorney Keena Haylock, of Guanaja, Republic of Honduras, did complete the transfer of the title to the property to the sole name of F. BAYARD PARKER, DEFENDANT, with the knowledge and intent of F. BAYARD PARKER, DEFENDANT, even though attorney Keena Haylock had knowledge of said powers of attorney and Judith S. Hockmeyer's Last Will and Testament, and attorney Keena Haylock acknowledged receipt of US$7,000 and requested payment of a balance of US$5,000;

20.   That on or about 15 January 2002, F. BAYARD PARKER, DEFENDANT, with knowledge and intent, induced NICHOLAS H. PARKER, PLAINTIFF, to pay US$1,000 to F. BAYARD PARKER, DEFENDANT, by claiming costs and expenses incurred in carrying out his duties under said powers of attorney, when F. BAYARD PARKER, DEFENDANT, had previously caused title to the property to be transferred to the sole name of F. BAYARD PARKER, DEFENDANT;

21.   That on or about 23 January 2002, F. BAYARD PARKER, DEFENDANT, with knowledge and intent, induced NICHOLAS H. PARKER, PLAINTIFF, to pay US$3,000 to F. BAYARD PARKER, DEFENDANT, by claiming costs and expenses incurred in carrying out his duties under said powers of attorney, when F. BAYARD PARKER, DEFENDANT, had previously caused title to the property

-8-

)                                    )

1  to be transferred to the sole name of F. BAYARD PARKER,

2  DEFENDANT;

3      22.   That on or about 21 March 2002, F. BAYARD PARKER,

4  DEFENDANT, with knowledge and intent, induced the approval of

5  the PLAINTIFFS for the Judith S. Hockmeyer Trust to pay US$5,000

6  to F. BAYARD PARKER, DEFENDANT, by claiming costs and expenses

7  incurred in carrying out his duties under said powers of

8  attorney, when F. BAYARD PARKER, DEFENDANT had previously caused

9  title to the property to be transferred to the sole name of F.

10 BAYARD PARKER, DEFENDANT;

11     23.   That on or about 21 May 2002, F. BAYARD PARKER,

12 DEFENDANT, with knowledge and intent, induced NICHOLAS H.

13 PARKER, PLAINTIFF, to pay US$150 plus US$19 in MoneyGram costs

14 to F. BAYARD PARKER, DEFENDANT, by claiming costs and expenses

15 incurred in carrying out his duties under said powers of

16 attorney, when F. BAYARD PARKER, DEFENDANT had previously caused

17 title to the property to be transferred to the sole name of F.

18 BAYARD PARKER, DEFENDANT;

19     24.   That on or about 3 June 2002, F. BAYARD PARKER,

20 DEFENDANT, with knowledge and intent, induced the approval of

21 the PLAINTIFFS for the Judith S. Hockmeyer Trust to pay US$5,000

22 to attorney Keena Haylock as the remaining and outstanding

23 balance for services rendered in the transfer of title to the

24 property, by claiming said costs and expenses incurred in

25 carrying out his duties under said powers of attorney, when F.

-9-

## 23

1  BAYARD PARKER, DEFENDANT, had previously caused title to the

2  property to be transferred to the sole name of F. BAYARD PARKER,

3  DEFENDANT;

4       25.  That on or about 7 June 2002, NICHOLAS H. PARKER,

5  PLAINTIFF, traveled to Guanaja, Republic of Honduras, and paid

6  said 3 June 2002 US$5,000 disbursement from the Judith S.

7  Hockmeyer Trust to attorney Keena Haylock, received the property

8  title transfer documents, and discovered the fraudulent transfer

9  of title to the sole name of F. BAYARD PARKER, DEFENDANT, and

10 upon inquiry on the point, attorney Keena Haylock stated to

11 NICHOLAS H. PARKER, PLAINTIFF, that F. BAYARD PARKER, DEFENDANT,

12 stated to her that his two brothers, NICHOLAS H. PARKER,

13 PLAINTIFF, and JOHN S. PARKER, PLAINTIFF, were not interested in

14 the property;

15      26.  That upon his return to the United States from the

16 Republic of Honduras, NICHOLAS H. PARKER, PLAINTIFF, demanded by

17 letters to F. BAYARD PARKER, DEFENDANT, dated 11 June 2002 and 4

18 September 2002, that the property not be sold until the title

19 was properly transferred to the names of all three sons,

20 NICHOLAS H. PARKER, PLAINTIFF, JOHN S. PARKER, PLAINTIFF, and F.

21 BAYARD PARKER, DEFENDANT;

22      27.  That at least as early as an exchange of emails dated

23 4 November 2002, 16 November 2002, 18 November 2002, and 30

24 January 2003, F. BAYARD PARKER, DEFENDANT, and CENTURY 21 J.

25 EDWARDS REAL ESTATE, DEFENDANT, conspired to secretly sell the

)                                                    )

1    property, with sales proceeds to be paid secretly and solely to

2    F. BAYARD PARKER, DEFENDANT, without the knowledge of

3    PLAINTIFFS;

4         28.  By exchange of emails on 30 January 2003, CENTURY 21

5    J. EDWARDS REAL ESTATE, DEFENDANT, represented to F. BAYARD

6    PARKER, DEFENDANT, that a contract offer of approximately

7    $344,000 by a United States buyer for purchase of the property

8    was imminent and that deposit and payoff funds should remain in

9    the United States, and F. BAYARD PARKER, DEFENDANT, requested

10   information from CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT,

11   on "delicate issues" involving payment of the purchase money;

12        29.  That on or about 4 March 2003, PLAINTIFFS gave notice

13   by email to CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, of the

14   fraudulent circumstances surrounding the title transfer and sale

15   of the property and demanded that the property be taken off the

16   market and not sold;

17        30.  That on or about 4 March 2003, CENTURY 21 J. EDWARDS

18   REAL ESTATE, DEFENDANT, gave assurance by email to PLAINTIFFS

19   that immediate steps would be taken to stop the marketing of the

20   property;

21        31.  That on or about 2 April 2003, the PLAINTIFFS and F.

22   BAYARD PARKER, DEFENDANT, entered into a settlement agreement

23   relating to the fraudulent actions of F. BAYARD PARKER,

24   DEFENDANT, complained of herein, wherein, among other things:

25

a.    F. BAYARD PARKER, DEFENDANT, agreed to grant

power of attorney to the representative of PLAINTIFFS

to, among other things, sell the property and receive

and disburse proceeds from the sale of the property, to

carry out the intent and purpose of Item II of Judith

S. Hockmeyer's Last Will and Testament;

b.    F. BAYARD PARKER, DEFENDANT, agreed to reimburse

PLAINTIFFS for any monies owed by F. BAYARD PARKER,

DEFENDANT, which were obtained by the fraud, and for

attorney fees and costs incurred in connection with the

matter;

c.    F. BAYARD PARKER, DEFENDANT, agreed to cease and

desist from exercising any authority, real or apparent,

in relation to the property;

d.    F. BAYARD PARKER, DEFENDANT, agreed to provide

information upon request in a full and timely manner

and to execute any documents deemed necessary to carry

out the terms of the settlement agreement;

32.    That on or about 14 April 2003, PLAINTIFFS gave notice

by fax to CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, as to

the existence of the settlement agreement, including the terms

that F. BAYARD PARKER, DEFENDANT, agreed to cease and desist

from exercising any authority with respect to the property and

provided a copy of the power of attorney granted by F. BAYARD

PARKER, and PLAINTIFFS requested information relating to prior

)                                )

1  business dealings between F. BAYARD PARKER, DEFENDANT, and

2  CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT;

3      33.  That on or about 15 April 2003, CENTURY 21 J. EDWARDS

4  REAL ESTATE, DEFENDANT, gave assurance by reply email that it

5  would comply with said 14 April 2003 fax, and further

6  represented that the property would sell between $400,000 and

7  $500,000, and the closer to $400,000 the faster the sale;

8      34.  That on or about 21 April 2003, CENTURY 21 J. EDWARDS

9  REAL ESTATE, DEFENDANT, gave further assurance by email that it

10 cancelled its listing agreement with F. BAYARD PARKER,

11 DEFENDANT, as instructed and again represented the property was

12 not being marketed, and again represented that the property

13 would sell fast at a price of $400,000;

14     35.  That on or about 24 April 2003, PLAINTIFFS gave notice

15 by fax to CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, that it

16 would not be selected as listing agent because of

17 unresponsiveness to requests for information relating to

18 previous business dealings between F. BAYARD PARKER, DEFENDANT,

19 and CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, and that it

20 had no authority then or in the future to hold itself out in any

21 way as agent for the property;

22     36.  That on or about 28 April 2003, CENTURY 21 J. EDWARDS

23 REAL ESTATE, DEFENDANT, gave acknowledgment by reply email of

24 said fax dated 24 April 2003, and threatened the property could

25 not be sold without CENTURY 21 J. EDWARDS REAL ESTATE,

-13-

1  DEFENDANT, because it was the most likely entity to bring a

2  valid offer on the property;

3      37.  That at least as recently as 31 July 2003, CENTURY 21

4  J. EDWARDS REAL ESTATE, DEFENDANT, without the knowledge of

5  PLAINTIFFS, continued to communicate with F. BAYARD PARKER,

6  DEFENDANT, continued to market the property at a reduced price

7  of US$400,000, and continued to hold itself out as listing agent

8  for the property, via its website,

9  www.hondurasrealestate.net/guanaja, being after CENTURY 21 J.

10  EDWARDS REAL ESTATE, DEFENDANT, repeatedly represented to

11  PLAINTIFFS that it was not marketing the property, after being

12  terminated as listing agent, and after receiving notice of said

13  settlement agreement and said terms, events which all occurred

14  prior to the website's last update on or about 27 May 2003;

15                          I.
                          FRAUD
16      (F. BAYARD PARKER and CENTURY 21 J. EDWARDS REAL ESTATE)

17      38.  That F. BAYARD PARKER, DEFENDANT, made false

18  statements that he intended to transfer the title to the

19  property to the three names of NICHOLAS H. PARKER, PLAINTIFF,

20  JOHN S. PARKER, PLAINTIFF, and F. BAYARD PARKER, DEFENDANT;

21      39.  That F. BAYARD PARKER, DEFENDANT, had knowledge that

22  said statements were false, and did, with knowledge and intent,

23  transfer the title to the property to the sole name of F. BAYARD

24  PARKER, DEFENDANT;

25

                          -14-

1    40.    That said false statements induced PLAINTIFFS'

2  reliance by:

3          a.    causing PLAINTIFFS to sign a power of attorney

4          granting certain powers to F. BAYARD PARKER, DEFENDANT,

5          with respect to the property; and

6          b.    causing PLAINTIFFS to approve disbursement of

7          monies from the Judith S. Hockmeyer Trust to F. BAYARD

8          PARKER, DEFENDANT, for costs and expenses; and

9          c.    causing NICHOLAS H. PARKER, PLAINTIFF, to give

10         monies to F. BAYARD PARKER, DEFENDANT, for costs and

11         expenses;

12     41.    That PLAINTIFFS suffered injury in reliance upon said

13  false statements by F. BAYARD PARKER, DEFENDANT, in that F.

14  BAYARD PARKER, DEFENDANT, intended, and did, transfer the title

15  to the property to the sole name of F. BAYARD PARKER, DEFENDANT,

16  and PLAINTIFFS have suffered damages, to wit: causing the

17  property to be unsaleable; PLAINTIFFS have each lost the value

18  of their one-third (1/3) interest in the property; and NICHOLAS

19  H. PARKER, PLAINTIFF, has lost monies given to F. BAYARD PARKER,

20  DEFENDANT, for costs and expenses;

21     42.    That F. BAYARD PARKER, DEFENDANT, made false

22  statements in said settlement agreement, to wit:

23         a.    That F. BAYARD PARKER, DEFENDANT, would cease and

24         desist from exercising any authority, real or apparent,

25

1    in relation to the property, as represented in

2    paragraph 3 of said settlement agreement; and

3        b.    That F. BAYARD PARKER, DEFENDANT, would provide

4    information upon request in a full and timely manner

5    and to execute any documents deemed necessary to carry

6    out the terms of the settlement agreement, as

7    represented in paragraph 4 of said settlement

8    agreement;

9        43.    That F. BAYARD PARKER, DEFENDANT, had knowledge that

10    said statements were false, and intended, and did, secretly and

11    without the knowledge of PLAINTIFFS, continue to communicate

12    with CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, and intended,

13    and did, continue to market the property through CENTURY 21 J.

14    EDWARDS REAL ESTATE, DEFENDANT;

15        44.    That said false statements induced PLAINTIFFS'

16    reliance by causing PLAINTIFFS to enter into said settlement

17    agreement;

18        45.    That PLAINTIFFS suffered injury in reliance upon said

19    false statements by F. BAYARD PARKER, DEFENDANT, to wit: causing

20    the property to be unsaleable, PLAINTIFFS have each lost the

21    value of their one-third (1/3) interest in the property; and

22    NICHOLAS H. PARKER, PLAINTIFF, has lost monies given to F.

23    BAYARD PARKER, DEFENDANT, for costs and expenses;

24        46.    That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT,

25    made false statements that it would comply with the terms of

1  said settlement agreement and instructions of PLAINTIFFS and

2  that it would stop marketing the property;

3      47.  That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, had

4  knowledge of said settlement agreement and that said statements

5  were false, and did, with knowledge and intent, continue to

6  secretly communicate with F. BAYARD PARKER, DEFENDANT, and did

7  continue to secretly market the property, without the knowledge

8  of the PLAINTIFFS;

9      48.  That said false statements induced PLAINTIFFS'

10 reliance, by PLANTIFFS seeking to carry out the terms of said

11 settlement agreement;

12     49.  That PLAINTIFFS suffered injury in reliance upon said

13 false statements by CENTURY 21 J. EDWARDS REAL ESTATE,

14 DEFENDANT, to wit: causing the property to be unsaleable;

15 PLAINTIFFS have each lost the value of their one-third (1/3)

16 interest in the property; and NICHOLAS H. PARKER, PLAINTIFF, has

17 lost monies given to F. BAYARD PARKER, DEFENDANT, for costs and

18 expenses;

19                          II.
                  CONSTRUCTIVE FRAUD
20                  (F. BAYARD PARKER)

21     50.  That during the period complained of herein, F. BAYARD

22 PARKER, DEFENDANT, had a duty to disclose to PLAINTIFFS under

23 fiduciary obligations owed to PLAINTIFFS pursuant to said powers

24 of attorney granted by PLAINTIFFS to F. BAYARD PARKER,

25 DEFENDANT, and from the date of said settlement agreement

                          -17-

1  forward, F. BAYARD PARKER, DEFENDANT was under further

2  obligations to PLAINTIFFS pursuant to said settlement agreement;

3      51.   That F. BAYARD PARKER, DEFENDANT, did, knowingly

4  conceal, and failed to disclose, the fact that he intended, and

5  did, cause the transfer of the title to the property to the sole

6  name of F. BAYARD PARKER, DEFENDANT, and attempted to sell the

7  property for the sole benefit of F. BAYARD PARKER, DEFENDANT;

8      52.   That F. BAYARD PARKER, DEFENDANT, abused and took

9  unconscionable advantage of said powers of attorney and

10  settlement agreement by causing the title to the property to be

11  transferred to the sole name of F. BAYARD PARKER, DEFENDANT, and

12  attempting to sell the property for the sole benefit of F.

13  BAYARD PARKER, DEFENDANT;

14      53.   That PLAINTIFFS have suffered damages, to wit: causing

15  the property to be unsaleable; PLAINTIFFS have each lost their

16  one-third (1/3) interest in the property; and NICHOLAS H.

17  PARKER, PLAINTIFF, has lost monies given to F. BAYARD PARKER,

18  DEFENDANT, for costs and expenses;

19                              III.
                        BREACH OF CONTRACT
20                      (F. BAYARD PARKER)

21      54.   That F. BAYARD PARKER, DEFENDANT, did breach said

22  settlement agreement entered into on or about 2 April 2003,

23  between NICHOLAS H. PARKER, PLAINTIFF, JOHN S. PARKER,

24  PLAINTIFF, and F. BAYARD PARKER, DEFENDANT, to wit:

25

a.    F. BAYARD PARKER, DEFENDANT, did continue thereafter to secretly communicate with, and secretly market the property through, CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, without the knowledge of the PLAINTIFFS, and otherwise failed to cease and desist from exercising any authority, real or apparent, in relation to the property, in breach of paragraph 3 of said settlement agreement; and

b.    F. BAYARD PARKER, DEFENDANT, did fail to provide information deemed necessary to carry out the terms of the settlement agreement, including a 11 September 2003 demand to produce all papers, property surveys, title and tax documents, pictures and video recordings of the property, and contracts, agreements, letters, faxes, and email between F. BAYARD PARKER, DEFENDANT, and CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, and any other person or entity, in breach of paragraph 4 of said settlement agreement; and

c.    F. BAYARD PARKER, DEFENDANT, did fail on 12 September 2003 to execute an authorization for release of information to be issued to CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, to obtain the property file, and otherwise failed to execute any documents deemed necessary to carry out the terms of the settlement

1    agreement, in breach of paragraph 4 of said settlement

2    agreement;

3    55.   That PLAINTIFFS suffered damages as a result of the

4    breach of said settlement agreement, to wit: causing the

5    property to be unsaleable; PLAINTIFFS have each lost their one-

6    third (1/3) interest in the property; and NICHOLAS H. PARKER,

7    PLAINTIFF, has lost monies given to F. BAYARD PARKER, DEFENDANT,

8    for costs and expenses;

9                              IV.
                TORTIOUS INTERFERENCE WITH CONTRACT
10               (CENTURY 21 J. EDWARDS REAL ESTATE)

11   56.   That NICHOLAS H. PARKER, PLAINTIFF, JOHN S. PARKER,

12   PLAINTIFF, and F. BAYARD PARKER, DEFENDANT, did enter into said

13   settlement agreement or about 2 April 2003;

14   57.   That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, had

15   knowledge of said settlement agreement and said terms by faxed

16   notice on 14 April 2003, and as acknowledged by reply email on

17   15 April 2003;

18   58.   That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT,

19   did, intentionally and without justification, interfere with

20   said settlement agreement and induced F. BAYARD PARKER,

21   DEFENDANT, to breach said settlement agreement, by continuing

22   thereafter to secretly communicate with F. BAYARD PARKER,

23   DEFENDANT, and secretly continuing to market the property,

24   without the knowledge of the PLAINTIFFS;

25

)                                          )

1        59.   That PLAINTIFFS suffered damages as a result of the

2    breach of said settlement agreement, to wit: causing the

3    property to be unsaleable; PLAINTIFFS have each lost their one-

4    third (1/3) interest in the property; and NICHOLAS H. PARKER,

5    PLAINTIFF, has lost monies given to F. BAYARD PARKER, DEFENDANT,

6    for costs and expenses;

7                            V.
     NEGLIGENT MISREPRESTATION
8        (CENTURY 21 J. EDWARDS REAL ESTATE)

9        60.   That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT,

10   did, as part of its real estate business, provide information to

11   sellers of property;

12       61.   That PLAINTIFFS were sellers holding an interest in

13   the property;

14       62.   That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, did

15   provide information that the property was no longer being

16   marketed, and that information was false;

17       63.   That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, did

18   intend the PLAINTIFFS to rely on said information and PLAINTIFFS

19   did so rely;

20       64.   That CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT,

21   failed to exercise reasonable care in communicating said

22   information;

23       65.   That PLAINTIFFS are within the class of possible

24   plaintiffs by virtue of PLAINTIFFS being persons for whose

25

1  benefit or guidance CENTURY 21 J. EDWARDS REAL ESTATE,

2  DEFENDANT, intended to supply the information;

3      66.   That PLAINTIFFS suffered damages as a result of the

4  negligence by CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, to

5  wit: causing the property to be unsaleable; PLAINTIFFS have each

6  lost their one-third (1/3) interest in the property; and

7  NICHOLAS H. PARKER, PLAINTIFF, has lost monies given to F.

8  BAYARD PARKER, DEFENDANT, for costs and expenses;

9                          VI.
                      CONSPIRACY
10     (F. BAYARD PARKER and CENTURY 21 J. EDWARDS REAL ESTATE)

11     67.   That in furtherance of each cause of action plead

12 herein, F. BAYARD PARKER DEFENDANT, and CENTURY 21 J. EDWARDS

13 REAL ESTATE, DEFENDANT, did agree to accomplish the lawful sale

14 of the property by wrongful means;

15     68.   That in furtherance of said conspiracy, F. BAYARD

16 PARKER, DEFENDANT, did, conceal from PLAINTIFFS that F. BAYARD

17 PARKER, DEFENDANT, intended, and did, cause the title to the

18 property to be transferred to the sole name of F. BAYARD PARKER,

19 DEFENDANT, and intended, and did, engage CENTURY 21 J. EDWARDS

20 REAL ESTATE, DEFENDANT, to secretly sell the property with the

21 proceeds to be paid secretly and solely to F. BAYARD PARKER,

22 DEFENDANT, without the knowledge of the PLAINTIFFS;

23     69.   That in furtherance of said conspiracy, CENTURY 21 J.

24 EDWARDS REAL ESTATE, DEFENDANT, did, secretly market the

25 property and concealed communications and business dealings

)                                                    )

1  between F. BAYARD PARKER, DEFENDANT, and CENTURY 21 J. EDWARDS

2  REAL ESTATE, DEFENDANT, from PLAINTIFFS, before and after said

3  settlement agreement;

4      70.  That PLAINTIFFS suffered damages as a result of said

5  acts under said conspiracy, to wit: causing the property to be

6  unsaleable; PLAINTIFFS have each lost their one-third (1/3)

7  interest in the property; and NICHOLAS H. PARKER, PLAINTIFF, has

8  lost monies given to F. BAYARD PARKER, DEFENDANT, for costs and

9  expenses;

10                      RELIEF REQUESTED

11     WHEREFORE, for the foregoing reasons, PLAINTIFFS

12 respectfully request judgment be rendered against the

13 DEFENDANTS, jointly and severally, as follows:

14     Damages- NICHOLAS H. PARKER, PLAINTIFF

15     71.  Compensatory damages in the amount of US$165,000 for

16 NICHOLAS H. PARKER, PLAINTIFF, for loss of his one-third (1/3)

17 interest in the total property value of US$500,000, being the

18 upper total market value of the property as represented by

19 CENTURY 21 J. EDWARDS REAL ESTATE, DEFENDANT, in its email dated

20 15 April 2003;

21     72.  Compensatory damages in the amount of US$4,169,

22 fraudulently obtained from NICHOLAS H. PARKER, PLAINTIFF, by F.

23 BAYARD PARKER, DEFENDANT, for costs and expenses;

24     Damages- JOHN S. PARKER, PLAINTIFF

25

1     73.  Compensatory damages in the amount of US$165,000 for,

2    JOHN S. PARKER, PLAINTIFF, for loss of his one-third (1/3)

3    interest in the total property value of US$500,000;

4    Damages- NICHOLAS H. PARKER, PLAINTIFF, and, JOHN S.
    PARKER, PLAINTIFF

5

6    74.  Punitive damages in the amount of US$165,000, to

7    punish and deter the DEFENDANTS, and to otherwise prevent the

8    DEFENDANTS from profiting from their wrongs, being an amount

9    otherwise equal to the value of F. BAYARD PARKER, DEFENDANT'S

10    one-third (1/3) interest in the total property value of

11    US$500,000;

12    Costs

13    75.  All court costs recoverable by law;

14    Interest

15    76.  All interest recoverable by law, including pre-

16    judgment and post-judgment interest;

17    Attorneys' fees

18    77.  All attorney fees recoverable by law, including

19    attorney fees and costs incurred and recoverable pursuant to

20    said settlement agreement;

21    78.  Any other and further relief to which PLAINTIFFS may

22    be entitled;

23                 TRIAL BY JURY

24    79.  That PLAINTIFFS further demand a trial by jury.

25

-24-

1    Dated:    San Francisco, CA
2              2 January 2004

3

4

5                                   Scott Michael Moore, Esq.
6                                   MOORE INTERNATIONAL LAW OFFICES
                                    A Professional Corporation
7                                   388 Market Street, Suite 500
                                    San Francisco, CA  94111
8                                   T. 415-623-2766
                                    F. 415-623-2767
9                                   E. smm@MILOPC.com

10                                  Counsel for Nicholas H. Parker,
                                    and John S. Parker, Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT B**
[March 15, 2007 letter from Defendants (attaching Judgments in Florida Lawsuit)]



# MOORE INTERNATIONAL LAW OFFICES
## A PROFESSIONAL CORPORATION

45 ROCKEFELLER PLAZA, SUITE 2000
NEW YORK, NEW YORK 10111 USA

TELEPHONE: +(212) 332-3474
FACSIMILE: +(212) 332-3475

INTERNATIONAL LEGAL MATTERS

WRITER: SCOTT MICHAEL MOORE
SMM@MILOPC.COM
LICENSED & ADMITTED
SUPREME COURT OF THE UNITED STATES OF AMERICA
U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT
U.S. COURT OF INTERNATIONAL TRADE
OTHER U.S. FEDERAL COURTS
STATES OF NEW YORK & MICHIGAN ONLY
LONDON COURT OF INTERNATIONAL ARBITRATION

Via Courier

PERSONAL & CONFIDENTIAL

Our Ref:
Your Ref:

15 March 2007

Nicholas H. Parker
1275 2nd Ave., Apt. 5
San Francisco, CA 94122

    Re:  Termination of Representation

Dear Mr. Parker:

    This letter is to regretfully, effective immediately
this date, resign, withdraw, and terminate representation
under our engagement letter dated 24 February 2003,
relating to the dispute regarding F. Bayard Parker's
handling of the title transfer, and his proposed sale, of
the Honduras Real Estate, owned by your late mother, Judith
S. Hockmeyer.

    This letter is also to explain the reasons for
termination, as unpleasant, blunt, and harsh as those
reasons may be, and are, and to confirm the current status
of this matter.

As more particularly described below, you and your brother, John S. Parker, currently each hold a valid judgment against your brother, F. Bayard Parker, totaling over half a million dollars, ready to be enforced against F. Bayard Parker's assets anywhere in the world. The status of the Honduran property is as F. Bayard Parker last left it, to Wit: title in his name only.

<u>Reasons for Termination</u>

It is nothing short of bizarre, when the undersigned was initially engaged by you to stop F. Bayard Parker from selling the Honduran property, and now you have engaged another attorney to stop the undersigned from selling the property.

It is impossible for the undersigned to render further services for the following reasons.

1.   Your non-payment since August 2006, with a current balance of $6,198.20.

2.   Your failure to return repeated telephone calls from the undersigned beginning 6 February 2007.

3.   Your failure to cooperate with the undersigned since 6 February 2007 under the terms of the Settlement and Release Agreement signed by you on 24 March 2003. For over four (4) weeks, you failed to respond to a proposal by a new proposed Honduran real estate agent, Guanaja Reef Realty, Guanaja, Bay Islands, Honduras, located on the same Island as the property, to get the Honduran property sale ready for marketing as they required, resulting in the proposed agent's withdrawal of the proposal. This has been the only qualified Honduran real estate agent willing to take on the property listing after the property taint caused by F. Bayard Parker.

4.   Your secret engagement of Neil Gieleghem, Esq., who, while the undersigned was recently unavailable and engaged in unrelated litigation and travel, sent a number of surprise faxes and left a number of surprise voicemail messages, outrageous, hostile, threatening, and adversarial in nature, and

interfering with the undersigned's duties under your own instructions. Some of these outrageous voicemail messages were barely intelligible and one was completely unintelligible, and sounded made from a cell phone in a car. Attorney Gieleghem has made outrageous and reckless suggestions that the undersigned is unqualified for this international legal representation. This is outrageous conduct one expects of an adversary, not of one's own client. The U.S. District Court and the U.S. Court of Appeals, which admitted the undersigned for the litigation in this matter, would beg to differ. According to a search on Martindale-Hubbell, Mr. Gieleghem has no attorney listing whatsoever, and therefore is very unlikely an international lawyer and unlikely has any idea about international legal matters. It is clear you are unhappy with the decisions and instructions you have made in this matter, and a scapegoat is ludicrously being sought by this secret engagement and interference.

5.  Your recurring confusion, suspicions, memory problems, impetuousness, emotional high when things go your way, and anger when things don't go your way, are in my view, symptoms of a mental illness, such as bipolar depression. Your behavior has made this representation difficult, and now impossible with your lack of cooperation and secret engagement of Mr. Gieleghem. The alcoholism of your brother, F. Bayard Parker. The homelessness of your brother John N. Parker. The death of your mother from alcoholism. The fighting among your family members over money. All these conditions made this representation very difficult because of the resulting lack of credibility of the parties.

6.  Lastly, the fact that you and your brother, John Parker, should never have originally signed the powers of attorney in favor of your brother, F. Bayard Parker, with respect to the Honduran property, prepared by your family and Trust Counsel Ramsey Pratt, when the named parties and attorneys, had full knowledge of the evil propensities of F. Bayard Parker and made his bad acts in Honduras perfectly foreseeable. It was plain bad judgment on your part, and it was plain error for your family

PERSONAL & CONFIDENTIAL    MOORE INTERNATIONAL LAW OFFICES, P.C.
15 March 2007
Page 4 of 7

attorney and Trust Counsel Ramsey Pratt to prepare and
permit the documents to be signed. No one has owned up
and taken responsibility for these facts, which were
at the root of the Honduran property problem. All this
occurred prior to the engagement of the undersigned.

Status of the Matter

The following traces the major aspects of this
representation up to the present status at termination.

1.    The undersigned was engaged by you on 24 February
      2003, to pursue resolution of the dispute regarding
      F. Bayard Parker's handling of the title transfer,
      and his proposed sale, of the Honduras real estate,
      owned by your late mother, Judith S. Hockmeyer.
      (Enclosed) (All original documents and papers you
      provided are also enclosed.) You sought out and
      engaged the undersigned as an international attorney
      for this international legal matter, and at the time
      you had full information and knowledge that this
      practice is strictly limited to international legal
      matters, with appropriate qualifications, and that
      this was not a State of California matter nor was
      the undersigned admitted in the State of California.
      This full disclosure of qualifications was confirmed
      by the engagement letterhead listing of licenses and
      admissions of the undersigned (Licensed and Admitted
      in "States of New York and Michigan Only"). To raise
      this licensing issue now through Mr. Gieleghem, when
      you are unhappy with your decisions and
      instructions, is outrageous and ludicrous and can
      only be motivated by pure malice and greed. It is
      common for international practitioners to have a mix
      of admissions and licenses, and it has been common
      for the undersigned to meet other international
      practitioners in California and other state and
      international jurisdictions not necessarily licensed
      in the state, with disclosure of that fact to
      clients, as was the case here. (See the
      undersigned's letter to Mr. Gieleghem, dated 5 March
      2007, when Mr. Gieleghem stealthily failed to
      identify you as his client.)

PERSONAL & CONFIDENTIAL    MOORE INTERNATIONAL LAW OFFICES, P.C.
15 March 2007
Page 5 of 7

2.    Your above described behavior required the
      undersigned to expend extra care and time to you as
      a client. This care often required monthly status
      conferences to help us to stay focused on your
      decisions and instructions, and analyzing plusses
      and minuses, risks and benefits, of options and
      decisions, as we moved along your chosen path to
      deal with the corrupt actions of your evil brother,
      F. Bayard Parker, in Honduras. You made carefully
      informed decisions each step of the way, from the
      beginning to the present. It is clear now you are
      unhappy with your decisions and instructions, and
      blame others.

3.    From the beginning and up to the present, Parker
      family attorneys and Trust Counsel, Ramsey Pratt,
      was kept informed of the status of this matter by
      periodic courtesy telephone conferences, as you
      decided and instructed. Never once did Ramsey Pratt
      voice unhappiness to the undersigned. Ramsey Pratt
      even reviewed the Settlement and Release Agreement
      prior to signature by the parties.

4.    The secret proposed sale of the Honduran property by
      F. Bayard Parker, which he secretly listed with J.
      Edwards Real Estate, in Roatan, Bay Islands,
      Honduras, was stopped, as you decided and
      instructed.

5.    A Settlement and Release Agreement was entered into
      by you, John Parker, and F. Bayard Parker, signed by
      F. Bayard Parker on 2 April 2003, as you decided and
      instructed. (Enclosed). Under the terms and part of
      this settlement agreement, Moore International Law
      Offices, P.C. was granted limited power of attorney
      by F. Bayard Parker to cause the settlement
      agreement to be carried out by selling the Honduran
      property with the proceeds to be distributed among
      the parties.

6.    After entering into the settlement agreement, F.
      Bayard Parker continued to secretly communicate with
      his listing agent and continued efforts to secretly
      sell the Honduran property, which tainted the
      Honduran property and resulted in the property

becoming unsaleable. No qualified Honduran agent would list the property.

7.   Litigation was commenced by you and John Parker against F. Bayard Parker and his Honduran real estate agent, J. Edwards Real Estate, in U.S. District Court for the Middle District of Florida, Tampa Division, for among other things, breach of the above settlement agreement, as decided and instructed by you. Judgment was entered in favor of you in the amount of US$283,916, including attorney fees and costs. Judgment was entered in favor of John Parker in the amount of US$279,747, including attorney fees and costs. (Enclosed). These judgments are valid and in force as against F. Bayard Parker. The judgments were voided only as against J. Edwards Real Estate, by the District Court, affirmed on appeal, after the undersigned had frozen over US$300,000 of J. Edwards' funds in a Texas bank pursuant to execution of the judgments, and later released by the Court. Parker v. Parker, Case No. 8:04-cv-41-T-26MSS (M.D. Florida 2004), aff'd, 05-15231-A (11th Cir. 2006). (The full and complete case file is available and publicly accessible for electronic downloading using the PACER system. Any attorney experienced in federal litigation uses ECF/PACER and can download the case file in full or in part.) As you know, during the course of contesting the District Court's voiding of the judgments against J. Edwards, it is the undersigned's view that the Courts were not sympathetic to our position because the judgments against your brother, F. Bayard Parker, remained valid and you obtained the relief sought, and the Courts could not understand why you and your brother, John Parker, would knowingly grant a power of attorney to your evil brother, which made his bad acts foreseeable, other than plain greed.

8.   The judgments of Nicholas and John Parker against F. Bayard Parker, in the total amount of US$563,663, may currently be enforced against assets of F. Bayard Parker anywhere in the world. Known F. Bayard Parker assets include monies in the Parker Trust in the U.S., and the property on Guanaja, Bay Islands, Honduras.

15 March 2007
Page 7 of 7

9. At this point in time, the settlement agreement is now unenforceable. Authority and obligations of the parties under the agreement, including the undersigned's power of attorney granted by F. Bayard Parker, are discharged. F. Bayard Parker breached the agreement, resulting in litigation and a final judgment being rendered against him. And now Nicholas Parker breached the agreement by failing to cooperate with, and frustrated the efforts of, the undersigned to enforce your judgments against the Honduran property assets.

10. At this point in time, the legal status of the Honduran property remains as F. Bayard Parker last left it, to Wit: title in his name only.

The undersigned truly regrets that this representation has ended in this fashion. Should you have any questions, please do not hesitate to contact the undersigned.

Very Truly Yours,

MOORE INTERNATIONAL LAW OFFICES, P.C.

BY:

Scott Michael Moore
Attorney at Law

Counsel for Nicholas H. Parker

cc:          Gayle Ramsey, Esq. (via Facsimile w/out enclosures)
             John Neil Gieleghem, Esq. (via Facsimile & enclosures by courier only)

Enclosures:  Engagement letter, dated 24 February 2003
             Settlement and Release Agreement
             All original documents and papers provided by Nicholas H. Parker
             Judgment in favor of Nicholas H. Parker in the amount of US$283,916
             Judgment in favor of John Parker in the amount of US$279,747

FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

04 MAY 25 AM 10: 36

⟨⟩ ⟨⟩ U.S. DISTRICT CT.
⟨⟩ ⟨⟩ DISTRICT OF FL.
TAMPA,FLORIDA

NICHOLAS H. PARKER and JOHN S.
PARKER,

                    **Plaintiff,**

-vs-                                    **Case No.  8:04-cv-41-T-26MSS**

F. BAYARD PARKER and CENTURY 21 J.
EDWARDS REAL ESTATE,

                    **Defendant.**

## JUDGMENT IN A CIVIL CASE

**Decision by Court.**   This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

     **IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of Plaintiff Nicholas H. Parker and against Defendants in the sum of $283,916.

Date:  May 25, 2004

                        SHERYL L. LOESCH, CLERK

                        By _____
                            J. Garoutte, Deputy Clerk

Copies furnished to:

Counsel of Record
Unrepresented Parties

FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

04 MAY 25  AII 10: 35

CLERK U.S. DISTRICT C
M.D. DISTRICT OF FLORIDA
TAMPA, FLORIDA

NICHOLAS H. PARKER and JOHN S.
PARKER,

            Plaintiff,

-vs-                                                    Case No.  8:04-cv-41-T-26MSS


F. BAYARD PARKER and CENTURY 21 J.
EDWARDS REAL ESTATE,

            Defendant.


## JUDGMENT IN A CIVIL CASE

**Decision by Court.**   This action came to trial or hearing before the Court.  The issues have been
tried or heard and a decision has been rendered.


    **IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of Plaintiff John S.
Parker and against Defendants in the sum of $279,747.



Date:   May 25, 2004

                          SHERYL L. LOESCH, CLERK

                    By: _____
                         J. Garoutte, Deputy Clerk


Copies furnished to:

Counsel of Record
Unrepresented Parties

SETTLEMENT AND RELEASE AGREEMENT

This agreement is made between F. BAYARD PARKER, of
Hillsborough County, State of Florida, NICHOLAS H. PARKER, of San
Francisco County, State of California, and JOHN S. PARKER, of
Buncombe County, State of North Carolina, with respect to the
following facts:

A. Under Item Two of The Last Will and Testament of JUDITH S.
   HOCKMEYER, all real and personal property were devised in
   equal shares to her three sons, to wit: F. BAYARD PARKER,
   NICHOLAS H. PARKER, and JOHN S. PARKER.

B. Pursuant to Item Two of the Last Will and Testament of
   JUDITH S. HOCKMEYER, in 1995, NICHOLAS H. PARKER and JOHN
   S. PARKER each executed a limited power of attorney
   appointing F. BAYARD PARKER on their behalf to give effect
   to said Item Two with respect to property located in the
   Honduras.

C. A legal action for fraud has now been reviewed for
   commencement against F. BAYARD PARKER, arising from
   evidence that F. BAYARD PARKER transferred the title to the
   Honduras real estate to himself only and attempted to sell
   said property to and for his sole benefit, after F. BAYARD
   PARKER previously induced and received legal authority from
   NICHOLAS H. PARKER and JOHN S. PARKER, and induced and
   received funds from the family trust and NICHOLAS H.
   PARKER, wherein F. BAYARD PARKER represented that he was,
   pursuant to Item Two of The Last Will and Testament of
   JUDITH S. HOCKMEYER, undertaking the steps necessary in the
   Honduras to transfer the title of the Honduras real estate
   to the name of all three brothers, to wit: F. BAYARD
   PARKER, NICHOLAS H. PARKER, and JOHN S. PARKER.

D. The parties now desire to settle the dispute according to
   the following terms.

IN CONSIDERATION OF the following mutually agreed upon
covenants, the parties agree as follows:

1. The parties agree that the intent and purpose of this
   agreement is to carry out Item Two of The Last Will and
   Testament of JUDITH S. HOCKMEYER with relation to those
   lands in the Honduras, agree that said lands shall now be
   sold at not less than fair market value, and agree that the
   net proceeds from said property sale shall be distributed
   in equal shares to F. BAYARD PARKER, NICHOLAS H. PARKER,
   and JOHN S. PARKER. Net proceeds shall mean proceeds after
   deduction of costs and expenses. F. BAYARD PARKER agrees to
   the reimbursement and deduction from his share of net

proceeds for any outstanding monies owed by F. BAYARD
PARKER to the family trust and to NICHOLAS PARKER which
were obtained by F. BAYARD PARKER per paragraph C above and
for attorney fees and costs incurred in connection with
this matter.

2. To carry out the terms of this agreement, F. BAYARD PARKER
   agrees to execute a limited power of attorney (attached
   hereto and incorporated by reference), to appoint the law
   firm, MOORE INTERNATIONAL LAW OFFICES, P.C., as his true
   and lawful Attorney-in Fact to do and perform the following
   acts: in relation to those lands located in the Honduras
   which were devised to F. BAYARD PARKER, NICHOLAS H. PARKER,
   and JOHN S. PARKER, under the terms of the Last Will and
   Testament of JUDITH S. HOCKMEYER, to execute such documents
   as it may deem necessary, for the management and conveyance
   of said lands, the resolution of any conflicts concerning
   the title to and legal status of said lands, the contracts
   of sale and deeds conveying said lands, to receive and
   disburse all proceeds received from the aforesaid matters
   and transactions and to pay all closing costs and any other
   costs in connection therewith.

3. F. BAYARD PARKER agrees to cease and desist from exercising
   any authority, real or apparent, in relation to said
   property in the Honduras.

4. F. BAYARD PARKER agrees to provide information upon request
   in a full and timely manner and shall execute any documents
   deemed necessary by MOORE INTERNATIONAL LAW OFFICES, P.C.
   to carry out the terms of this agreement.

5. The parties have signed this agreement as a full compromise
   and release of all claims.

6. This written agreement contains the entire understanding of
   the parties and there are no other promises or conditions
   other than those contained in this agreement.

7. This agreement shall be forever binding upon the parties
   and their respective agents, personal representatives,
   executors, and assigns.

8. This agreement may be enforced in any court of law with
   competent jurisdiction in the United States.

IN TESTIMONEY WHEREOF, the parties have signed this settlement
and release agreement effective on that date the last of the
three (3) signatures below is affixed hereto.

F. BAYARD PARKER

Dated this 7 day of April, 2003

NICHOLAS H. PARKER

Dated this 24 day of MARCH, 2003

JOHN S. PARKER

Dated this 18 day of March, 2003

LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that I, F. BAYARD PARKER (unmarried), of the county and state below, have made, constituted, and appointed and by these presents do make, constitute and appoint the law firm, MOORE INTERNATIONAL LAW OFFICES, P.C., as my true and lawful Attorney-in Fact to do and perform the following acts for me, on my behalf and in my name to the same extent as if I were personally present and acting:

In relation to those lands located in the Honduras which were devised to F. BAYARD PARKER, NICHOLAS H. PARKER, and JOHN S. PARKER, under the terms of the Last Will and Testament of JUDITH S. HOCKMEYER, to execute such documents as it may deem necessary, for the management and conveyance of said lands, the resolution of any conflicts concerning the title to and legal status of said lands, the contracts of sale and deeds conveying said lands, to receive and disburse all proceeds received from the aforesaid matters and transactions and to pay all closing costs and any other costs in connection therewith.

And I do hereby ratify and confirm all things so done by my said Attorney-in-Fact within the scope of the authority herein given, as fully and to the same extent as if by me personally done and performed, specifically ratifying and confirming any and all acts and things so done by my said Attorney-in-Fact within the terms of the authority herein given.

IN TESTIMONEY WHEREOF, I have hereunto set my hand and seal this ~1~ day of March 2003.
April.

_____
F. BAYARD PARKER

STATE OF FLORIDA, COUNTY OF HILLSBOROUGH,

I, Joseph S. Schoenborn a Notary Public of said State and County, do hereby certify that F. BAYARD PARKER (unmarried) personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and Notarial Seal, this the 9th day of April, 2003.

_____
Notary Public

My Commission Expires 2-20-2007.



JOSEPH SCHOENBORN
MY COMMISSION # DD 186428
EXPIRES: February 20, 2007
Bonded Thru Notary Public Underwriters

**EXHIBIT C**
**[April 15, 2008 Meet-And-Confer Letter]**

LAW OFFICES of

# Neil Gieleghem

1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 284-3252
Facsimile: (310) 282-3253

J. NEIL GIELEGHEM, ESQ.
ngieleghem@sbcglobal.net

April 15, 2008

By Fax & U.S. Mail
(212) 332 3475

Scott Michael Moore, Esq.
Moore International Law Offices, P.C.
45 Rockefeller Plaza, Suite 2000
630 5th Avenue
New York, New York 10111

Re:    Parker v. Moore, et al.
       USDC ND Cal. Case No. C081896 JCS *[as per Defendants' caption]*
       San Francisco Superior Court Case No. 08-473343

Dear Mr. Moore:

This responds to the Notice of Removal, and Motion to Dismiss, that you filed in the above-referenced case.

Defendants' Removal Is Improvident

Your removal is improvident, as there is not the required complete diversity between Plaintiff and Defendants given that the latter include "Moore International Law Office, A Professional Corporation," a California corporation No. C2346237 (hereinafter "MILOCA").

Contrary to your apparent misunderstanding, MILOCA's alleged dissolution in June, 2004 is irrelevant to the diversity analysis, as made clear by the leading authority on California federal court practice:

(11) [2:321.4] Defunct corporations: There is a split on the proper test for the citizenship of a defunct (or inactive) corporation for diversity purposes (Patel v. Sugen, Inc. (ND CA 2005) 354 F.Supp.2d 1098, 1111 (citing text)):

• [2:321.5] Some courts look both to the state of incorporation and to the state of the corporation's last business activity. [Athena Automotive, Inc. v. DiGregorio (4th Cir. 1999) 166 F3d 288, 291; Circle Industries USA, Inc. v. Parke Const. Group, Inc. (2nd Cir. 1999) 183 F3d 105, 108—inactive corporation's "principal

Moore International Law Offices, P.C.
April 15, 2008
Page 2

place of business" is the state in which it last transacted business]

• [2:321.6] Some courts hold an inactive corporation has no "place of business" and therefore is a citizen only of its state of incorporation. [Midlantic Nat'l Bank v. Hansen (3rd Cir. 1995) 48 F3d 693, 696]

• [2:321.7] Other courts adopt a case-by-case approach: i.e., if the corporation has been inactive for a substantial period of time (e.g., 5 years), it is a citizen only of the state where it is incorporated. Otherwise, the court must examine the company's activities as it was closing its doors and determine whether its business had a continuing impact in that locale. If so, the place of its last business activity would be relevant to (but not dispositive of) the determination of its "principal place of business." [Harris v. Black Clawson Co. (5th Cir. 1992) 961 F2d 547, 551; see also Athena Automotive, Inc. v. DiGregorio, supra, 166 F3d at 291–292—corporation that ceased business activities still a citizen of place of incorporation because it kept its charter in good standing]

See Schwarzer, Tashima & Wagstaff, Cal. Prac. Guide: Fed. Civ. Proc. Before Trial (The Rutter Group 2008), §§ 2:321.4 - 2:321.7. Under any of the analyses described, your removal of this action from San Francisco Superior Court was improvident.

Based on the above, Plaintiff hereby demands that you stipulate, no later than the close of business on Friday, April 18, 2008, to the remand of this case. If I do not receive a signed stipulation to this effect by this deadline, Plaintiff will file a motion for remand without further notice.

In connection with such a motion for remand, Plaintiff will seek to recover his attorneys fees and costs pursuant to 28 U.S.C. § 1447. In connection with this fee and cost recovery, Plaintiff will cite this letter as establishing that Defendants were on notice that their removal was improvident. Please note that these fees and costs will be substantial.

Defendants' Motion To Dismiss

Defendants' Motion to Dismiss is defective on, among other grounds, its failure to designate a hearing date as required by the Local Rules for the Northern District of California. Unless and until Defendants give proper notice of a hearing date, Plaintiff is under no obligation to respond to this pleading.

Pro Hac Vice Application

Your pleadings indicate that you have applied for *pro hac vice* admission to the Northern District. No such application has been served on Defendants. If you have filed such an application, Plaintiff demands that the same be served on this office immediately, so that Plaintiff can contest any such admission.

Scott Michael Moore, Esq.
Moore International Law Offices, P.C.
April 15, 2008
Page 3

<u>Improper Caption</u>

Last, but not least: Your pleading caption inexplicably includes my name and law firm on top of yours, albeit as "Counsel for Plaintiff." Please correct your caption, and otherwise conform your pleadings to Local Rule requirements and standard practice in this jurisdiction – even though you are not admitted to practice in California.

Thank you for your prompt attention to the above.

Very truly yours,

Neil Gieleghem

cc:    Client

LAW OFFICES

# NEIL GIELEGHEM

1875 CENTURY PARK EAST
SUITE 700
LOS ANGELES, CA 90067
TELEPHONE: (310) 284-3252
FACSIMILE: (310) 284-3253
ngieleghem@sbcglobal.net

# FAX COVER SHEET

Date: April 15, 2008

Pages (including cover page): __4__

| Recipient(s) | Fax | Telephone |
|---|---|---|
| Scott Michael Moore, Esq.<br>C/o Moore International Law Offices<br>New York, New York | 212 332 3475 | 212 332 3474 |

Matter:    Parker v. Moore

From: Neil Gieleghem    Fax: (310) 284-3253         Tel: (310) 284-3252
                                                     ngieleghem@sbcglobal.net

COMMENTS: Please see attached.

The information contained in this facsimile message is attorney-client privileged and/or confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

* * *

```
          TRANSMISSION VERIFICATION REPORT

                                    TIME  : 04/15/2008 18:33
                                    NAME  : GIELEGHEM LAW
                                    FAX   : 3102843253
                                    TEL   : 3102843252
                                    SER.# : 000C6J304260
```

```
  DATE,TIME            04/15  18:32
  FAX NO./NAME         912123323475
  DURATION             00:01:06
  PAGE(S)              04
  RESULT               OK
  MODE                 STANDARD
                       ECM
```

LAW OFFICES

## NEIL GIELEGHEM

1875 CENTURY PARK EAST
SUITE 700
LOS ANGELES, CA 90067
TELEPHONE: (310) 284-3252
FACSIMILE:  (310) 284-3253
ngieleghem@sbcglobal.net

# FAX COVER SHEET

Date: April 15, 2008

Pages (including cover page): __4__

| Recipient(s) | Fax | Telephone |
|---|---|---|
| Scott Michael Moore, Esq. C/o Moore International Law Offices New York, New York | 212 332 3475 | 212 332 3474 |

Matter:    Parker v. Moore

From: Neil Gieleghem    Fax: (310) 284-3253

Tel: (310) 284-3252
ngieleghem@sbcglobal.net

COMMENTS: Please see attached.

The information contained in this facsimile message is attorney-client privileged and/or confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of

**EXHIBIT D**
**[April 24, 2008 Meet-And-Confer Letter]**

LAW OFFICES of

# Neil Gieleghem

1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone:  (310) 284-3252
Facsimile:  (310) 282-3253

J. NEIL GIELEGHEM, ESQ.
ngieleghem@sbcglobal.net

April 24, 2008

By Fax Only
(212) 332 3475

Scott Michael Moore, Esq.
Moore International Law Offices, P.C.
45 Rockefeller Plaza, Suite 2000
630 5th Avenue
New York, New York 10111

      Re:    Parker v. Moore, et al.
             USDC ND Cal. Case No. 3:08-CV-01896-PJH
             San Francisco Superior Court Case No. 08-473343

Dear Mr. Moore:

Earlier today I faxed you Plaintiff's Motion to Remand, etc.

As stated in that pleading, Plaintiff's remand motion is set for hearing on June 4, 2008, the same date for which you have noticed Defendants' previously filed Motion to Dismiss.

In Plaintiff's view, neither the Court nor the parties should be forced to address Defendants' Motion to Dismiss until the jurisdictional issue raised by the remand motion is resolved. Under the present schedule, however, Plaintiff will be forced to incur the attorney fees and costs required to file an Opposition to the Motion to Dismiss in advance of the June 4 hearing on the remand motion.

As stated in the Motion to Remand, if Plaintiff is forced to prepare and file an Opposition to the Motion to Dismiss, and the case is remanded, he will seek to recover these additional fees and costs pursuant to 28 U.S.C. § 1447(c).

Plaintiff is prepared to give Defendants an opportunity to avoid this risk, by their stipulating that their Motion to Dismiss will be continued to a later date that would allow for the Court to rule on the remand motion, and if that motion is denied, to allow Plaintiff a reasonable time to prepare and file an Opposition, e.g., 30 days after the June 4 hearing date.

Please be advised, however, that if Defendants refuse to so stipulate, and thereby force

Scott Michael Moore, Esq.
April 24, 2008
Page 2

Plaintiff to prepare and file an Opposition in time for the hearing on June 4, 2008, Plaintiff will seek to recover said additional fees and costs pursuant to 28 U.S.C. § 1447(c). In this regard, Plaintiff will cite this letter to the Court as evidencing that Defendants forced Plaintiff to incur these additional fees and costs.

Given the deadline for the filing and service of such an Opposition, I ask that you let me know, on or before the close of business on Tuesday, April 29, 2008, whether Defendants will so stipulate. If I do not receive a response, I will assume Defendants refuse to stipulate, and proceed consistent with the above.

On an unrelated point: My client informs me that, during your representation, he provided you with a videotape that showed, among other things, the Honduran beachfront property. This videotape was not included in the case file materials you previously forwarded.

If this tape is still in your possession, I request that you forward the same immediately. If the tape is not in your possession, I ask that you provide an explanation for your failure to include the same with the client case file materials.

Thank you for your anticipated prompt attention to the above.

Very truly yours,

Neil Gieleghem

cc:    Client

LAW OFFICES

# NEIL GIELEGHEM

1875 CENTURY PARK EAST
SUITE 700
LOS ANGELES, CA 90067
TELEPHONE: (310) 284-3252
FACSIMILE: (310) 284-3253
ngieleghem@sbcglobal.net

# FAX COVER SHEET

Date: April 24, 2008

Pages (including cover page): __3__

| Recipient(s) | Fax | Telephone |
|---|---|---|
| Scott Michael Moore, Esq. C/o Moore International Law Offices New York, New York | 212 332 3475 | 212 332 3474 |

Matter:    Parker v. Moore

From: Neil Gieleghem    Fax: (310) 284-3253        Tel: (310) 284-3252
ngieleghem@sbcglobal.net

COMMENTS: Please see attached April 24, 2008 letter re motion to dismiss, etc.

The information contained in this facsimile message is attorney-client privileged and/or confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

* * *

TRANSMISSION VERIFICATION REPORT

```
                                    TIME : 04/24/2008 13:34
                                    NAME : GIELEGHEM LAW
                                    FAX  : 3102843253
                                    TEL  : 3102843252
                                    SER.# : 000C6J304260
```

```
DATE,TIME              04/24  13:33
FAX NO./NAME           912123323475
DURATION               00:01:22
PAGE(S)                03
RESULT                 OK
MODE                   STANDARD
                       ECM
```

LAW OFFICES

## NEIL GIELEGHEM

**1875 CENTURY PARK EAST**
**SUITE 700**
**LOS ANGELES, CA 90067**
**TELEPHONE: (310) 284-3252**
**FACSIMILE:  (310) 284-3253**
**ngieleghem@sbcglobal.net**

# FAX COVER SHEET

Date: April 24, 2008

Pages (including cover page): __3__

| Recipient(s) | Fax | Telephone |
|---|---|---|
| Scott Michael Moore, Esq. C/o Moore International Law Offices New York, New York | 212 332 3475 | 212 332 3474 |

Matter:    Parker v. Moore

From:  Neil Gieleghem    Fax: (310) 284-3253    Tel: (310) 284-3252
ngieleghem@sbcglobal.net

COMMENTS: Please see attached April 24, 2008 letter re motion to dismiss, etc.

The information contained in this facsimile message is attorney-client privileged and/or confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of